STATE *v.* VICTOR TACEY.

February Term, 1930.

Present:  POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed May 7, 1930.

*Burton E. Bailey* and *Deane C. Davis* for the respondent.

*C. O. Granai,* State's attorney, for the State.

SLACK, J. The respondent was convicted of operating a motor vehicle, to wit, an automobile, while under the influence of intoxicating liquor in violation of Act No. 70, section 87, Laws of 1925. The first exception is to the refusal of the court to direct a verdict for the respondent. Whether this should have been done depends upon the construction to be given to certain provisions of the act referred to, since the evidence respecting what respondent did was undisputed, and no claim is here made but that he was under the influence of intoxicating liquor.

Section 3, par. 2 of the statute in question provides that: " 'Motor vehicle' shall include all vehicles propelled by power other than muscular power, except road rollers, fire apparatus," etc.; and the last paragraph of the same section provides: " 'Operate,' 'operating,' or 'operated' as applied to motor vehicles shall include an attempt to operate ,and shall be construed to cover all matters and things connected with the presence and use of motor vehicles on the highways, whether they be in motion or at rest."

So far as the record discloses the respondent was first seen on the day in question on Vine Street in the town of Berlin near the intersection of that street with the main highway leading from Montpelier to Barre. He was then in his car, which was being towed by a truck, steering or trying to steer it. How far he had proceeded in this manner did not appear. Subsequently, the car was towed by the truck about a mile toward Montpelier and back to Vine Street, in an attempt to start its engine, which failed to function. On this trip one Gauthier drove the truck, the owner of the truck, Benway, drove or steered respondent's car, and the respondent rode in his car with Benway. When they got back to Vine Street, Benway started to tow the car to respondent's home, a distance of about one-half mile. The respondent again got behind the steering wheel of his car and tried to guide or steer it as it was being towed. They had proceeded but a short distance when they were remonstrated with because of the injury that they were doing to the street, and thereupon they left both the truck and the car and went to respondent's home to get a pair of horses. Before they got back the respondent was arrested.

The respondent insists that, since his automobile could not then be operated on its own power, it was not a motor vehicle

within the meaning of the statute first quoted, and that, in what he did, he did not operate or attempt to operate it within the meaning of the other provisions of the statute quoted.

■ The first ground is untenable. Manifestly it was the design, mechanism, and construction of the vehicle, and not its temporary condition, that the Legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion.

The conviction, therefore, must stand or fall upon the construction given the word "operate," as defined by the statute. According to Webster's International Dictionary this word means: "To put into, or to continue in, operation or activity; to manage; to conduct; to carry out or through; to work; as to operate a machine." See, also, Standard Dictionary; Century Dictionary; 29 Cyc. 1496; 5 Words and Phrases, third series, page 629. But our Legislature evidently intended to give to this word a broader and a more inclusive meaning; hence the statutory definition above quoted. In this respect our statute is unlike that of any other state, so far as we have discovered. For this reason, the cases in those states are not directly in point. But since they show what acts have and what have not been held to constitute "operating" as defined by the lexicographers, we refer to some of them.

In *Dewhirst et al.* v. *Connecticut Co.,* 96 Conn. 389, 114 Atl. 100, which is the only case cited by the respondent on this point, the plaintiffs sought to recover for damages to their truck which was struck by defendant's trolley car. A statute of that state provided, in effect, that no recovery could be had by the owner of a motor vehicle for injury thereto received while such vehicle was being operated by an unlicensed person. The plaintiffs' truck, which was disabled, was towed to a garage by the truck of one Edwards. Plaintiffs' driver, who was not licensed, steered their truck while it was being so towed. When the garage was reached, the driver got off plaintiffs' truck, and had nothing more to do with it. Thereafter the Edwards' truck attempted to push plaintiffs' truck into the garage, and, in so doing, moved it onto defendant's track where it was struck by defendant's trolley car. It was held that plaintiffs' truck was not being operated by their driver. But whether this related to the time when it was being towed, or to the time of the collision, or to both, is not clear.

In *Norcross* v. *B. L. Roberts Co.*, 239 Mass. 596, 132 N. E. 399, it was held that one who pushed a disabled motor cycle along the highway did not operate it within the meaning and purpose of the statute.

On the other hand, it is held that one who gets into a car and starts the engine, although he does not attempt to move the car, is operating it; *State* v. *Ray*, 4 N. J. Misc. Rep. 493, 133 Atl. 486; that one who gets into a car and merely idles the engine is operating such car; *State* v. *Webb*, 202 Iowa, 633, 210 N. W. 751, 49 A. L. R. 1389; that one who gets into a car, starts the engine, and attempts to move the car, but is unable to do so because of lack of power, or for other reasons, is operating such car. *State* v. *Overbay*, 201 Iowa, 758, 206 N. W. 634; *People* v. *Domagala*, 123 Misc. Rep. 757, 206 N. Y. S. 288.

In *Comm.* v. *Clarke*, 254 Mass. 566, 150 N. E. 829, 830, the respondent left his car standing on Huntington Avenue in the city of Boston about one o'clock in the afternoon. When he returned to it some hours later, he had been drinking, and for that reason decided to leave it where it was. He got into it for the purpose of locking the transmission, and to do that had to "throw the clutch over from the reverse to neutral." While so engaged, the car, which stood on a slight incline, solely by reason of its own weight and the law of gravitation, moved forwar about four feet. A conviction of operating his car while under the influence of intoxicating liquor was sustained.

██ The fact that the car in that case could have been moved on its own power, if such was the fact, is immaterial, since no attempt or intent to so move it, or indeed to move it at all, was shown. The engine was not started or even the ignition turned on. The respondent merely did something that allowed the car to move forward solely by reason of its own weight and the law of gravitation. If, in what the respondent there did, he was guilty of operating his car, it is not apparent how the acts of this respondent can be excused, irrespective of the statute. Be that as it may, we entertain no doubt but that in prosecutions of this character our statute was intended to, and does, cover such acts as the respondent is shown to have committed. The primary object of the particular provision on which this prosecution is based is the protection of the public from injury to person or property by drunken operators on our streets and highways, and, if it can fairly be done, the

statute must be so construed as to accomplish the purpose for which it was intended. Whether the words "operate," etc., should be given a like meaning when used in connection with other infractions of our motor vehicle laws we are not called upon to decide. We hold that the respondent's motion was properly denied.

The respondent excepted to the charge of the court to the effect that if, while under the influence of intoxicating liquor, he sat at the wheel of his car and steered or attempted to steer it when it was being towed, he was guilty of the offense charged. This was in keeping with what we hold the law to be, and the exception is unavailing. The exception to the refusal to set aside the verdict is disposed of by what has already been said.

*Judgment that there is no error in the proceedings, and that the respondent takes nothing by the exceptions. Let execution be done.*