## Commonwealth v. Riehl

*Paul A. Mueller*, district attorney, for Commonwealth.

*George T. Hambright* and *John E. Malone*, for defendant.

ATLEE, P. J., March 19, 1935.—Under the provisions of section 620 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, Gideon S. Riehl was prosecuted for operating a motor vehicle while intoxicated. The indictment is drawn in the language of the act and avers that on June 11, 1934, the said defendant "did unlawfully operate a motor vehicle while under the influence of intoxicating liquor or narcotic." The testimony of the defendant shows that he lives in Lancaster County on Route 1, Ronks. He came to Lancaster on June 10, 1934, driving a Chevrolet one-seated car. Bound west on Chestnut Street about Shippen Street the car "started to miss" and finally stopped. Riehl then coasted to where he wanted to go, namely to the Beavers' lodge rooms, and left the car there. The lodge was having

a picnic south of Lancaster and Riehl went to the picnic in the car of a fellow member of the lodge. At the picnic Riehl drank several glasses of beer and was brought back to Lancaster by a man named Eckert Erb. About 11:30 in the evening Riehl was ready to go home and Erb tried to start the car for Riehl, but Erb could not get the car started. Then Erb said he would push the defendant in the defendant's car out to the defendant's home. Moving at the rate of between 5 and 10 miles per hour Riehl, in his car in front without any motive power turned on, and Erb, in the car in the rear, proceeded from Chestnut and Cherry Streets west to Duke Street, south on Duke Street, east on East King Street as far as the seven hundred block. As Riehl and Erb approached a restaurant in this seven hundred block Riehl pulled over to the curb. As Erb did not know Riehl was going to stop Erb kept on pushing and pushed Riehl's car against a car parked along the curb. This collision "made a little crash." Samuel S. Fry came out of his house, informed Riehl that the car struck was Fry's brother-in-law's car, and informed Riehl that Fry was "going to call the cops." Then Riehl got out of his car, went back to another car that was parked nearby, crawled in this car, and waited for the police. The defendant denies that he fell out of the car when the police came there.

On the part of the Commonwealth, Samuel S. Fry testified that the defendant smelled very strongly of alcohol, was at the driver's wheel of the first car, and further that when Riehl got out of the car he staggered and his speech "seemed kind of dense, like." According to the opinion of this witness Riehl was under the influence of an intoxicant. Samuel F. Aulthouse and Ray Rohrer, police officers, testified that the defendant was intoxicated.

At the conclusion of the testimony the defendant's counsel submitted a point asking the court to charge the jury that under the law and the evidence in this case the verdict of the jury must be one of not guilty. This point was refused by the trial judge.

Six reasons for a new trial have been filed. The first three reasons being purely formal need not be discussed at length.

The remaining reasons are as follows:

"4. The court erred in refusing the defendant's point for binding instructions.

"5. The court erred in submitting the case to the jury because the Commonwealth failed to prove that the defendant was 'operating' a 'motor vehicle' at the time alleged in the indictment.

"6. The court erred in submitting the case to the jury because the Commonwealth proved that the defendant was not 'operating' a 'motor vehicle' at the time alleged in the indictment."

In brief, these reasons raise this question: Where a man under the influence of intoxicating liquor is seated at the wheel of an automobile, the engine of which is not running, and is doing no more to operate the motor vehicle than to guide it while said vehicle is propelled by another car, can such person so operating such motor vehicle be convicted under the provisions of the act of assembly above referred to which makes it a misdemeanor to operate a motor vehicle while under the influence of intoxicating liquor?

The defendant by his counsel has filed an elaborate brief and contends that the defendant cannot be convicted because the motor vehicle in which he was riding was not self-propelled.

Defendant's counsel have called the attention of the court to the following cases: Dewhirst et al. v. The Connecticut Co., 96 Conn. 389, 114 Atl. 100, where a man without a driver's license steering a disabled truck which was being pushed to a garage by another truck was held not to be operating the vehicle which he was steering; Norcross v. B. L. Roberts Co., 239 Mass. 596, 132 N. E. 399, in which the Supreme Judicial Court of Massachusetts decided that a man pushing an unregistered motorcycle along the side

of the highway was not operating the said motorcycle nor was he permitting it to remain upon the highway, while unregistered. The law of Massachusetts required that such vehicle be registered.

On behalf of the Commonwealth, the district attorney contends that to constitute operating a motor vehicle within the meaning of our act of assembly, it is not essential that the automobile be actually in motion. The district attorney cites the following cases: State v. Webb, 202 Iowa 633, 210 N. W. 751, holding that where the defendant stepped on the starter and permitted the engine to idle, he was guilty of "operating" an automobile while intoxicated; Commonwealth v. Clarke, 254 Mass. 566, 150 N. E. 829, where it was decided that it was not necessary that the engine be running to make a defendant guilty of operating a motor vehicle while intoxicated (in this case a drunken driver manipulated the gears of a standing automobile so as to permit the automobile to move forward by its own weight and collide with another automobile); The People of the State of New York v. Domagala, 123 Misc. Rep. 757, 206 N. Y. Supp. 288, where starting the motor for the purpose of putting an automobile into motion was decided to be operation of the automobile under a statute prohibiting the operation of an automobile while intoxicated, although the motor was not powerful enough to force the automobile over a curb without stalling; State v. Ray, 4 N. J. Misc. 493, 133 Atl. 486, where it was decided that a person getting into a car and starting an engine while intoxicated is guilty of operating while intoxicated; State v. Storrs, 105 Vt. 180, 163 Atl. 560, where it was decided that turning on of the ignition switch constituted operating a motor vehicle within a statute prohibiting operating a motor vehicle while intoxicated. This last cited case is from the Supreme Court of Vermont and the opinion of that court says:

"It is strongly urged that an intent to operate the vehicle is an essential element of the offense described by

the statute, and that no such intent can exist where the operation itself is known to be impossible. This argument apparently proceeds upon the assumption that to operate a motor vehicle, within the meaning of the statute, something must be done to put the engine in motion, whether the car itself is actually moved or not. But this is not so. The statute above quoted (section 3) provides that the word 'operate' shall include an attempt to operate and 'shall be construed to cover all matters and things connected with the presence and use of motor vehicles on the highway, whether they be in motion or at rest.' In *State v. Tacey*, 102 Vt. 439, 441, 150 Atl. 68, 68 A. L. R. 1353, it is pointed out that in passing the act the Legislature evidently intended to give to the word a broader and more inclusive definition than that lexicographically attributed to it. Indeed it is plain that it was intended to forbid an intoxicated person to do anything with regard to the mechanism of a motor vehicle, whether it has any effect upon the engine or not. In accordance with the broad construction which we are required by the statutory direction to adopt, it becomes clear that the turning of the ignition switch and the effect of this upon the self-starter was an operation of the car, since it was a matter or thing connected with its use and presence upon the highway. And so no question of intent is involved. Since this was itself the forbidden act, the respondent cannot plead the lack of intent or inability to do more, or urge, as, indeed, he does not, that he is to be excused because of his ignorance of the unlawful quality of his act. These exceptions are, therefore, unavailing." In State v. Tacey, 102 Vt. 439, 150 Atl. 68, another case from the Supreme Court of Vermont, a defendant who guided his automobile while it was being towed by another car was found guilty of operating the car within the statute prohibiting operation of automobile by an intoxicated person.

Our own Act of May 1, 1929, P. L. 905, sec. 102, 75 PS §2, defines "operator" as "Every person who is in

actual physical control of a motor vehicle or tractor upon a highway."

Penal statutes must be construed strictly but this means no more than that the statute is to be interpreted according to its language. In interpreting any act, the courts always must bear in mind the mischief and the remedy intended to be applied by the act. It is the duty of the court to take such construction of the statute as shall suppress the mischief and advance the remedy.

In the case of Commonwealth v. Lanzetti et al., 97 Pa. Superior Ct. 126, in an opinion by Trexler, J., page 128, the Superior Court said that the test of the meaning of words in a statute is the meaning of these words "in common parlance." As above stated The Vehicle Code defines an operator as "Every person who is in actual physical control of a motor vehicle or tractor upon a highway." The offense of operating a motor vehicle while intoxicated can be committed only upon a highway. The Vehicle Code defines this as a necessary constituent element of the offense. In the opinion of this court the person who is in actual physical control of a motor vehicle upon a highway is an operator of said motor vehicle. The Vehicle Code does not limit the term "actual physical control" to a moving vehicle. The purpose of the act against operating a motor vehicle while under the influence of intoxicating liquor, etc., is to protect the traveling public and this being manifestly the fact, a court should not define the instant offense in such a way as to allow of any exceptions or evasions. "Actual physical control" interpreted in common parlance, common parlance being the test laid down by our Superior Court, can mean only one thing, namely the management of the movements of either the machinery of a motor vehicle or management of the movement of the vehicle itself. In the instant case a motor vehicle was being moved along a highway. Riehl, the defendant, was controlling the direction of that vehicle. The verdict of the jury established the fact that he was intoxicated at the

time he was steering the car. Whether the accident happened by reason of Erb failing to get Riehl's signal that Riehl desired to stop, or whether the accident occurred due to Riehl's intoxication is not material.

The Superior Court of Pennsylvania, in an opinion by Cunningham, J., in the case of Commonwealth v. Woodward, 110 Pa. Superior Ct. 478, 488, has said: "Although we may deem a case to be within the reason of the statute, or the mischief it is designed to remedy, we may not place it under the provisions of the enactment, unless plainly authorized by its language." But this principle cannot prevent the interpretation of The Vehicle Code herein adopted because such interpretation is plainly authorized by the language of the code as interpreted "in common parlance."

After careful consideration of the record in this case the court now discharges the rule to show cause why a new trial should not be granted.

Rule discharged.