**COLORADO DIVISION OF REVENUE, Alan Charnes, Director, Motor Vehicle Division, Colorado Department of Revenue, Petitioner,**

v.

**James C. LOUNSBURY, Respondent.**

**No. 86SC129.**

Supreme Court of Colorado,
En Banc.

Sept. 14, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for petitioner.

Cohen Jones, P.C., H. Paul Cohen, Gregory Jones, Denver, for respondent.

VOLLACK, Justice.

The Colorado Department of Revenue, Motor Vehicle Division [hereinafter DMV], appeals from the court of appeals' unpublished opinion, *Lounsbury v. Colorado Division of Revenue,* No. 84CA1320 (Colo. App. Jan. 23, 1986) [hereinafter *Lounsbury*]. The court of appeals held that the revocation of Lounsbury's driver's license could not be upheld because he had been denied due process of law, based on *Kirke v. Motor Vehicle Division,* 724 P.2d 77 (Colo.App.1986) [hereinafter *Kirke*]. Because we have overruled the court of appeals' due process holding in *Kirke,* 743 P.2d 16 (Colo.1987), we now reverse.

**I.**

In December 1983, an Arvada police officer arrived at the scene of an accident to find the respondent, James Lounsbury [hereinafter Lounsbury or licensee], seated behind the wheel of a motor vehicle; the

car's engine was running and the car was being pulled out of a snowbank by a Jeep. Lounsbury indicated to the officer that he had been driving northbound and was "cut off" by two southbound vehicles, which caused him to slide on the icy street and drive into the snowbank. The officer detected a strong odor of alcohol on Lounsbury's breath and requested the assistance of a DUI enforcement officer.

When the DUI officer arrived, Lounsbury was seated in the driver's seat of his vehicle. The DUI officer also noted a strong odor of alcohol on Lounsbury's breath and directed him to perform roadside maneuvers. Lounsbury failed three of the five maneuvers; the DUI officer arrested him, and he and the first officer transported Lounsbury to the Arvada Police Department. After Lounsbury was "booked in" by the two officers, he was given a breath test to determine his blood alcohol content [hereinafter BAC]. The test result was a 0.224 BAC. The DUI officer completed a Notice of Revocation or Denial of Lounsbury's driver's license because his BAC exceeded the legal limit under the "per se" statute.[1] Lounsbury exercised his statutory right to a DMV hearing on the revocation of his license. § 42-2-122.1(7), 17 C.R.S. (1984).

At the revocation hearing, the DUI officer testified; the officer who first arrived at the accident scene was not present. The DUI officer testified as to the first officer's observations, his own observations, and the administration and result of the chemical test. Lounsbury objected to the hearsay testimony regarding statements made by the first officer; the objection was overruled. ·

The principal disputes at the hearing were whether Lounsbury was driving a motor vehicle, and whether he was given a chemical test within the one hour statutory limit.[2] On the issue of whether Lounsbury was driving, the DUI officer's testimony was that the first officer told him that when she drove by and noticed the accident, "she observed [Lounsbury] being pulled out." The DUI officer testified that he was told by the first officer that "when [Lounsbury] was pulled out he was behind the wheel of the car and in control of it" and that she "saw it actually being pulled out of the snow."

Lounsbury testified at the hearing; he said that he drove into the snowbank at approximately 6:30 P.M. and walked to his nearby house to call a friend for assistance in pulling his car out of the snowbank. He testified that he made this phone call "prior to a quarter of seven." He also testified that "before I made the phone call and also after[,] I had a drink and you about hit somebody broadside, I was a little disturbed."[3] After calling for assistance, he walked back to his disabled vehicle to wait for his friend's arrival.

Lounsbury's testimony was that when the first officer noticed the accident and stopped to investigate, he was standing outside his vehicle attempting to unhook the towing chain from the bumper of his car. This statement was in direct conflict with the DUI officer's testimony that when the first officer arrived "the defendant was seated in the vehicle and it was running when it was being pulled out and she observed him in control of the vehicle."

On the issue of the time, the DUI officer testified that the first officer's contact with Lounsbury was at 7:25; "at 7:25 hours

---

1.  The department shall revoke the license of any person upon its determination that the person:
    (I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath.
    § 42-2-122.1(1)(a)(I), 17 C.R.S. (1984).

2.  Section 42-2-122.1(1)(a)(I) requires that the blood or breath test be performed "at the time of the commission of the alleged offense or within one hour thereafter." *See supra* note 1.

3.  The case report prepared and signed by the first officer states: "PO advised Lounsbury that alcoholic beverage was evident on his breath. Lounsbury said, 'I won't deny that. I've had a few shooters.'" This report was admitted into evidence at the revocation hearing.

[P.M.], she observed him being pulled out." He arrived at the scene five minutes later. The breath test was administered at 8:15 P.M. The case report completed by the first officer was also entered into evidence. The report stated that at 1925 hours, she:

> observed a Jeep pulling a silver Cadillac out of a snow bank.... The Cadillac was also occupied by one male. P[olice] O[fficer] observed the engine on the Cadillac to be running.... After the Jeep pulled the Cadillac from the snow bank, PO approached the driver of the Cadillac....

The hearing officer found that the chemical test was given within one hour of the offense. He also found that Lounsbury was operating a motor vehicle, based on the testimony that the first officer had observed that Lounsbury "had control of the vehicle as [it was] being extricated from the snowbank." Addressing the conflict in testimony, the hearing officer specifically stated: "I am not convinced of the testimony as presented by the respondent, Mr. James Carlton Lounsbury." On the basis of the testimony presented at the hearing and the results of the chemical test, the hearing officer determined that the elements of revocation had been established by a preponderance of the evidence, and ordered revocation of Lounsbury's driver's license.

Lounsbury appealed, and the district court affirmed. The court of appeals reversed the district court, relying on its due process holding in *Kirke*, which we have since reversed. *Kirke*, 743 P.2d 16 (Colo. 1987). We reverse the court of appeals' conclusion that Lounsbury's revocation requires reversal because there was only hearsay evidence as to the element of time.

## II.

### A.

█ In its modified opinion, the court of appeals held that *Kirke* "is dispositive and mandates reversal" because:

> [t]he only evidence which supported the hearing officer's finding that plaintiff was driving at 7:25 p.m. was the hearsay report of the officer who failed to appear at the revocation hearing. Since hearsay was the sole basis of the hearing officer's finding as to that element, the trial court erred in affirming the revocation.

*Lounsbury,* slip op. at 1.

We held in *Kirke* that it is not erroneous for a DMV hearing officer to enter a finding of an element of revocation in the absence of non-hearsay evidence as to that element, as long as (1) the hearsay evidence relied upon is sufficiently reliable and trustworthy, and (2) the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. *Kirke,* at 21. The hearsay testimony here consisted of statements made by the first officer to the DUI officer, regarding the first officer's observations when she arrived at the scene. If we conclude that this hearsay meets this test, then the hearing officer was entitled to rely on the hearsay testimony. If Lounsbury's actions constitute driving a motor vehicle, then the court of appeals was incorrect in its reversal of the revocation order.

In *Kirke,* we discussed factors to be considered in assessing the reliability and trustworthiness of hearsay at revocation hearings. *Kirke,* at 20–21. Here, the first officer made statements to a fellow officer in the course and conduct of her duties as a police officer. The DUI officer testified as to the first officer's statements to him, and further testified that when he arrived at the scene five minutes later, the licensee was seated behind the wheel of his vehicle. The Notice of Revocation or Denial prepared and signed by the first officer sets forth the statement: "You [Lounsbury] were observed by PO Welch [the first officer] in your vehicle stuck in a snowbank at 68th Ave. and Carr St. You were seated behind the steering wheel and in control of the vehicle." Lounsbury had the statutory right to subpoena the first officer and cross-examine her on her observations of his alleged driving, the alleged time, and

her statements to the DUI officer.[4] Lounsbury also had the right to subpoena the person who had towed him out of the snowbank; this friend was present when the first officer arrived and presumably could have provided corroborative testimony. Lounsbury also testified as to his version of the incident. Based on the reasoning and factors in *Kirke,* we conclude that the hearsay testimony was sufficiently reliable and trustworthy, and Lounsbury's due process rights were not violated by the hearing officer's reliance on this particular hearsay testimony.

The hearing officer's function, after hearing the evidence, was to assess the credibility of witnesses and weigh the evidence. In doing so, he ruled against Lounsbury. "[I]t is a maxim of appellate law that reviewing courts will not substitute their judgment for that of the fact finder." *Creech v. Department of Rev.,* 190 Colo. 174, 176, 544 P.2d 633, 634 (1976). When conflicting testimony is presented in an administrative hearing, the credibility of witnesses and the weight to be given their testimony are decisions within the province of the agency. *Mellow Yellow Taxi Co. v. Public Util. Comm'n,* 644 P.2d 18 (Colo. 1982).

### B.

The remaining issue is whether the record establishes that the hearsay testimony relied upon by the hearing officer supported the finding that Lounsbury was driving a motor vehicle. Lounsbury argues that even if the hearing officer properly relied on the hearsay testimony, the actions described by the police officer did not constitute driving a motor vehicle under the statute. We disagree.

We addressed a similar argument in *Brewer v. Motor Vehicle Division,* 720 P.2d 564 (Colo.1986). In *Brewer,* we stated that to "drive a vehicle" means to exercise *"actual physical control* of a motor vehicle upon a highway." *Id.* at 567 (emphasis added). *See also Smith v. Charnes,* 728 P.2d 1287 (Colo.1986) (intoxicated operator found asleep or unconscious behind the wheel of a stopped vehicle, with engine running and lights on, held to establish actual physical control of the vehicle).

Other jurisdictions have addressed factual situations in which a vehicle was being towed or pushed, and concluded that such actions constituted driving a vehicle under similar DUI statutes. *See State v. Roberts,* 139 Me. 273, 29 A.2d 457 (1942) (when car was being towed up an icy grade, in gear with engine running, and intoxicated defendants took turns sitting behind wheel, held to constitute operating a motor vehicle even though the car's front wheels were raised off the ground); *Commonwealth v. Kallus,* 212 Pa.Super. 504, 243 A.2d 483 (1968) (when motorist was in driver's seat of car stuck in a snowbank, in gear with engine running, and other people were attempting to push car out of the snowbank, held to constitute operation of a motor vehicle); *Hester v. State,* 196 Tenn. 680, 270 S.W.2d 321 (1954) (when automobile was being steered by an intoxicated person but the engine was not running and another vehicle was pushing it, held to constitute physical control of a motor vehicle under drunk driving statute); *Chamberlain v. State,* 163 Tex.Crim. 529, 294 S.W.2d 719 (1956) (when intoxicated motorist was steering his car and the engine was not running, but he was being pushed on the highway by another car, held to constitute operating a motor vehicle); *State v. Tacey,* 102 Vt. 439, 150 A. 68 (1930) (when intoxicated operator was steering automobile while it was being towed, held to constitute operating a motor vehicle); *Gallagher v. Commonwealth,* 205 Va. 666, 139 S.E.2d 37 (1964) (when car was stuck and intoxicated operator was accelerating the engine but unable to get vehicle out of the ditch, held to constitute operating the vehicle). *Compare People v. Kelley,* 27 Cal.App.2d 771, 70 P.2d 276 (1937) (based on these particular facts, when defendant moved his "nearly demolished" car by having others

---

**4.** "The presiding hearing officer shall have authority ... to issue subpoenas...." § 42–2– 122.1(8), 17 C.R.S. (1984).

push it a few feet to a safe location out of the traffic flow, held not to constitute driving under the statute). *See generally* Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 A.L.R.3d 7 (1979).

The test is whether Lounsbury was in "actual physical control" of the vehicle, and it is not a requirement that the vehicle be moving on its own power, or that the vehicle travel a particular distance. "[T]here is ample precedent for holding that the 'operation' [of a motor vehicle] intended to be curtailed by the state is not either complete or extended." *Roberts,* 139 Me. at 275–76, 29 A.2d at 458. The operation of a motor vehicle, for purposes of drunk driving statutes, can be as minimal as merely starting the motor, even though the vehicle is parked, *People v. Domagala,* 123 Misc. 757, 206 N.Y.S. 288 (1924), or starting the engine and leaving the car idling in neutral. *State v. Webb,* 202 Iowa 633, 210 N.W. 751 (1926). A significant factor is usually whether, in addition to starting the engine, there is "evidence of *intent to drive or move the vehicle* at the time." *State v. Daly,* 64 N.J. 122, 125, 313 A.2d 194, 196 (1973) (emphasis added).

Applying these principles, we conclude that under Colorado's "per se" statute these particular facts—the licensee seated behind the wheel, with the engine running and the car in gear, as the vehicle is towed out of a snowbank—constitute actual physical control of the vehicle. Because Lounsbury was in actual physical control of the vehicle while his BAC was above the legal limit, based on the result of a chemical test given within one hour of the offense, we conclude that the district court was correct in upholding the revocation order. Accordingly, we reverse the court of appeals and remand for reinstatement of the revocation order.