HOOPER, Chief Justice
(dissenting).
I respectfully dissent.
Kenneth Vann Whitehead was convicted of driving under the influence of alcohol. The Court of Criminal Appeals on May 19, 2000, affirmed his conviction, by an unpublished memorandum. Whitehead v. State (No. CR-99-0268), — So.2d — (Ala.Crim.App.2000) (table). I would grant Whitehead’s petition for certiorari review because I cannot determine, merely on the basis of the briefs presently before this Court, whether Whitehead was in “actual physical control” of the motor vehicle when he was questioned by police and subjected to a field sobriety test that led to his conviction. I think we should grant the petition to allow us an opportunity to examine the record and determine whether the State proved the element of “actual physical control.”
The materials before us suggest these facts: Whitehead met a friend at a gasoline station/convenience store. He parked his truck in the parking lot of the store, hid his keys between the seats, got in his friend’s vehicle, and rode off with his friend to go out for the evening. Later that night, knowing he was too intoxicated to drive and unable to notify a nephew to come get him, he took a taxi back to his truck. After telephoning his mother to come pick him up, he waited in his truck. A police officer noticed Whitehead sitting in the driver’s seat of his truck, which was legally parked in a designated parking place in the store’s lot. The officer left to patrol several other parking lots, and when he returned 10 to 15 minutes later he noticed that Whitehead was still sitting in his truck, parked in the same space. The officer called in a “suspicious-vehicle-or-person” report, and another police officer came to his assistance. The two officers approached Whitehead, who was in his truck, and began talking with him. They ordered Whitehead to exit his truck and as he exited it, they noticed a medallion of some kind — they mistakenly thought it be the truck keys — near the ignition. Upon exiting the vehicle, Whitehead informed the officers that he could not pass a field sobriety test, and he subsequently failed such a test. The officers recovered the keys from underneath the seat of the truck and determined that the vehicle could move in forward and reverse gears; however, they did not feel the hood of the truck to see if it was warm — warmth would have suggested the truck had been driven recently. Whitehead was subsequently arrested, and was convicted, for driving under the influence.
The statute upon which Whitehead was convicted, § 32-5A-191, Ala.Code 1975, requires as an element of the offense that the defendant “drive or be in actual physical control of’ a vehicle. That statute, however, does not define the term “actual physical control”; the appellate courts of this state have developed the meaning of that phrase. This Court defined it in Cagle v. City of Gadsden, 495 So.2d 1144, 1145 (Ala.1986), as the “exclusive physical power, and present ability, to operate, move, park, or direct whatever use or non- *1119 use is to be made of the motor vehicle at the moment” (quoting Key v. Town of Kinsey, 424 So.2d 701, 703 (Ala.Crim.App.1982)). The Court said that “actual physical control” is determined by employing a totality-of-the-circumstances test. The Court determined in Cagle that the defendant Cagle had not been in “actual physical control” of the vehicle in which he was found because, despite the fact that he was found behind the steering wheel of a truck that had struck a power pole and cracked it in half, no evidence was presented to indicate that he possessed the keys to the truck.
On the other hand, in Mester v. State, 755 So.2d 66 (Ala.Crim.App.1999), the Court of Criminal Appeals held that the defendant Mester had been in “actual physical control” of the vehicle in which he was seated when the law-enforcement officer approached him. In that case, Mester testified to this effect: That after he had consumed a few beers one evening, his sister came to his home and woke him up, telling him that his daughter’s Mazda RX7 motor vehicle had stalled at a gasoline station; that they went to the station to help the daughter with her car; that Mes-ter purchased some cigarettes inside the station and saw a deputy sheriff inside the store; that while he was inside the store, another man attempted to push the RX7, in an attempt to get it started; that the daughter was seated behind the steering wheel at the time; that the vehicle came to a rest on the side of a highway; that Mester then joined the group and told the others to find a chain so that they could tow the car home; that as his sister and his daughter left to find a chain, the deputy sheriff approached Mester, determined that the car would not start, and arrested Mester for driving under the influence. The deputy sheriff testified that he had been inside the station and that as he was returning to his car, he watched as another car pushed the RX7 onto the highway; that he saw both vehicles, especially the RX7, “swerving all over the road”; that he determined the vehicles “were unsafe” and activated his blue light and pulled both vehicles over; that Mester was behind the steering wheel of the RX7 at the time; that Mester smelled strongly of alcohol, had slurred speech and bloodshot eyes and was off balance; and that he arrested Mes-ter after he failed a field sobriety test. See Mester, 755 So.2d at 68.
Mester argued that because the RX7 would not start, he had no present ability to operate it; thus, he argued, he could not be guilty of driving under the influence. In affirming Mester’s conviction, the Court of Criminal Appeals stated:
“Disposition of this issue seems apparent after looking at the facts. As Mes-ter stated in his brief, a ‘source of propulsion’ had been provided for the RX7 and it was moving down a public roadway. As the RX7 was being pushed to its destination, Mester sat behind the wheel ‘driving’ or guiding its direction and applying the brakes when necessary. Thus, Mester was in the driver’s seat, behind the wheel, determining the direction and speed (there was no evidence that the brakes did not work) of the RX7. It seems obvious that Mester was in actual physical control of a vehicle and that he had the present ability to move the vehicle.
“We concede that there is no reported case exactly on point in Alabama; however, as authority for the proposition that Mester was in actual physical control of his automobile, there are several cases from other jurisdictions whose DUI statutes are similar to Alabama’s. These cases note, as the Colorado Supreme Court stated, that ‘it is not a requirement that the vehicle be moving on its own power, or that the vehicle *1120 travel a particular distance’ in order to conclude that a defendant was in ‘actual physical control’ of the automobile. Colorado Div. of Rev. v. Lounsbury, 743 P.2d 23, 27 (Colo.1987).
“ ‘Other jurisdictions have addressed factual situations in which a vehicle was being towed or pushed, and concluded that such actions constituted driving a vehicle under similar DUI statutes. See State v. Roberts, 139 Me. 273, 29 A.2d 457 (1942) (when car was being towed up an icy grade, in gear with engine running, and intoxicated defendants took turns sitting behind wheel, held to constitute operating a motor vehicle even though the car’s front wheels were raised off the ground); Commonwealth v. Kallus, 212 Pa.Super. 504, 243 A.2d 483 (1968) (when motorist was in driver’s seat of car stuck in a snowbank, in gear with engine running, and other people were attempting to push car out of the snowbank, held to constitute operation of a motor vehicle); Hester v. State, 196 Tenn. 680, 270 S.W.2d 321 (1954) (when automobile was being steered by an intoxicated person but the engine was not running and another vehicle was pushing it, held to constitute physical control of a motor vehicle under drunk driving statute); Chamberlain v. State, 163 Tex.Crim. 529, 294 S.W.2d 719 (1956) (when intoxicated motorist was steering his car and the engine was not running, but he was being pushed on the highway by another car, held to constitute operating a motor vehicle); State v. Tacey, 102 Vt. 439, 150 A. 68 (1930) (when intoxicated operator was steering automobile while it was being towed, held to constitute operating a motor vehicle); Gallagher v. Commonwealth, 205 Va. 666, 139 S.E.2d 37 (1964) (when car was stuck and intoxicated operator was accelerating the engine but unable to get vehicle out of ditch, held to constitute operating the vehicle). Compare People v. Kelley, 27 Cal.App.2d Supp. 771, 70 P.2d 276 (1937) (based on these particular facts, when defendant moved his “nearly demolished” car by having others push it a few feet to a safe location out of the traffic flow, held not to constitute driving under the statute). See generally Annotation, What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance, 93 A.L.R.3d 7 (1979).’
“743 P.2d at 26-27; see Harris v. State, 97 Ga.App. 495, 103 S.E.2d 443 (1958) (vehicle pushed by another car, then coasted down street without engine running, held to constitute operating a motor vehicle), overruled on other grounds, Luke v. State, 177 Ga.App. 518, 340 S.E.2d 30 (1986); State v. Ferrenti, 1 Conn.Cir.Ct. 108, 22 Conn.Supp. 494, 175 A.2d 378 (1961) (defendant’s being behind steering wheel of disabled automobile, which was being pushed along highway by another vehicle, held to constitute operating a motor vehicle); People v. Heimann, 142 Ill.App.3d 197, 491 N.E.2d 872, 96 Ill.Dec. 593 (1986) (intoxicated defendant’s being behind the wheel of inoperative automobile attempting to start it was held to constitute his being in control of vehicle).”
Mester, 755 So.2d at 69-71 (emphasis added) (footnote omitted.)
In Mester, the Court of Criminal Appeals appears to have based its decision on the key fact that the officer testified that Mester was steering the vehicle when he was pulled over. Although the testimony is disputed, we can certainly conclude that even if the car was not in motion at the *1121 time the deputy sheriff stopped Mester, the officer had seen it moving from its previous position at the gasoline station, where the defendant says it had stalled, onto a highway. This combination of factors served as a reasonable basis upon which the Court of Criminal Appeals could rely in determining that Mester, endangering the safety of himself and others by having the present ability to control a moving vehicle, was indeed guilty of driving under the influence. Moreover, most of the cases cited by that court also involve vehicles that had the ability to be controlled — whether by steering, braking, or other motion, by a present ability to start the vehicle, or by having the engine presently engaged.
This present case is different from Hester and the cases cited therein. The materials now before us indicate that when Whitehead was arrested, his truck was parked in a parking lot; that he was not driving down a highway; that he was not steering or braking a car that was being propelled by another vehicle; that he did not have the engine running; that in the prior 10 to 15 minutes he had not driven the truck; and that the keys were not even in the ignition, but were recovered from under the seat. Furthermore, this case presents a situation much less difficult to determine than Cagle. On the basis of the facts before this Court at this time, it appears that, as in Cagle, Whitehead may not have been in possession of the keys to his truck at the time he was questioned by the police officer. The materials before us indicate that, unlike the vehicle in Cagle, Whitehead’s truck was not found at the scene of an accident, such as a crash into a utility pole; that Whitehead was not involved in a wreck with other automobiles or people; and that Whitehead was sitting in his truck, which was legally parked in a designated parking space. Merely on the basis of the location of Whitehead and his vehicle, one could not determine if he had even driven the truck while under the influence of alcohol. The police did not feel the hood of the truck for warmth, which might have evidenced that the truck had been recently driven.
Given the information now before this Court on this petition for the writ of cer-tiorari, I am not comfortable in summarily denying review and leaving in place a holding that the State presented sufficient evidence to support Whitehead’s conviction. WTiitehead’s petition raises valid questions as to the sufficiency of the evidence presented by the State. I would grant the petition to examine the record and determine whether the facts show that Whitehead was in “actual physical control,” as this Court has defined that term, of the truck when he was questioned by police and subjected to the field sobriety test.