Mark A. CONKEY, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
ADMINISTRATION, DIVISION OF
MOTOR VEHICLES, Appellee.

No. S–11361.

Supreme Court of Alaska.

June 10, 2005.

Michael C. Kramer, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellant.

Robert A. Royce, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

In this case we must decide whether riding a towed snowmobile with limited steering ability constitutes operating a motor vehicle under Alaska law. Because a snowmobile is designed to be self-propelled, we hold that even a towed snowmobile is a motor vehicle. Because steering such a vehicle, even if only partially, involves exercising control over the vehicle, we hold that it amounts to operating the vehicle. Accordingly, we affirm the decisions below holding that riding a snowmobile towed by another vehicle constitutes operation of a motor vehicle under Alaska law.

### II. FACTS AND PROCEEDINGS

In the early morning of January 19, 2003, Officer Jon Miller of the North Pole police observed three snowmobiles traveling on the shoulder of the Badger Road exit ramp off the Richardson Highway, in violation of Alaska law.[1] According to Miller, the lead snowmobile was towing the second machine, and the towed machine would "intermittently pull into the traffic lane" and eventually "lost traction and swung into the traffic lane and stopped," at which point the three riders stopped, got off their machines, and pushed the second snowmobile back onto the shoulder.

The police officer made contact with the drivers and instructed them to move the snowmobiles into a nearby parking lot. The officer subsequently observed Appellant Mark Conkey, who had been riding on the second machine, lose his balance and fall. Conkey then removed his helmet and informed the officer that his snowmobile had run out of gas and that Wesley Rice, the driver of the first machine, was towing him to the gas station nearby. Officer Miller discerned that Conkey had "slurred speech" and "an odor of alcohol about his person," and Officer Bill Bellant, who arrived on the scene after the initial stop, noted that Conkey had a flushed face and watery eyes. Conkey allegedly also admitted that he had been drinking. Officer Bellant performed field sobriety tests on Conkey, who failed them. A portable breath test indicated that Conkey had a .122 percent breath alcohol concentration. Conkey was arrested for driving while intoxicated.

Upon arriving at the police station, Conkey was warned that refusal to submit to a chemical breath test following an arrest for DWI would lead to revocation of his driver's license. Conkey refused to submit to the additional test or answer any further questions. Following Conkey's refusal to submit to additional testing, his license was to be revoked, pursuant to Alaska's implied consent laws.[2] The revocation was postponed pending the outcome of a departmental hearing held at the Fairbanks branch of the Division of Motor Vehicles (DMV).

Following the hearing, departmental hearing officer Rebecca Janik found by a preponderance of the evidence that the police had probable cause to arrest Conkey for operating a motor vehicle while under the influence of alcohol. Janik's decision offered two grounds for finding that Conkey had operated his snow machine while under the influence. She first noted that under Alaska case law, a towed and inoperable snow machine is still considered a motor vehicle, and suggested that because Conkey had used the machine's handlebars for balance and support

---

1. 13 Alaska Administrative Code 02.455(a) (2004) provides that "[a] snowmobile or an off-highway vehicle may be driven on a roadway or shoulder of a highway only under [certain specific] circumstances," none of which were applicable to this incident.

2. See AS 28.15.165 (administrative revocations resulting from refusal to submit to chemical sobriety test); AS 28.35.031 (implied consent law).

and had gotten off the machine and pushed it when stuck, he had been "operating" the machine. She then noted that based on the "total circumstances of the situation," the officer had probable cause to arrest Conkey. Janik also suggested that because Conkey testified that he had been driving his snow machine before it ran out of gas and was then towed for only four or five miles prior to contact with the police, and because Conkey was drunk at the time of his arrest, therefore Conkey must have been drunk earlier while actually driving his snow machine. Janik also found that Conkey had unlawfully refused to provide a breath sample after being legally arrested for DWI. Janik accordingly imposed a three-year revocation of Conkey's driver's license.

Conkey appealed the division's revocation of his license to the superior court, which affirmed. Conkey appeals.

## III. STANDARD OF REVIEW

■ Where the superior court acts as an intermediate court of appeal for an administrative decision, we directly and independently review the underlying administrative deci-

sion, and may affirm the decision below on any ground supported by the record.[3]

■ We affirm an administrative agency's factual findings if they are supported by "substantial evidence," which we define as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In applying this "substantial evidence test," we will not reweigh the evidence or choose between competing inferences reasonably drawn from the evidence.[5]

## IV. DISCUSSION

### A. Conkey's Snowmobile Was a "Motor Vehicle."

■ Conkey argues before this court—as he did before the superior court and the DMV—that his refusal to submit to a chemical test does not support revocation of his driver's license because his snowmobile was not legally a motor vehicle and he was not operating it when he was stopped.[6]

■ The first part of Conkey's argument is that his snowmobile was merely "a sled," because it was "completely inoperable. It was out of gas, the drive belt had been disconnected rendering the engine useless,

**3.** *Leuthe v. State, Commercial Fisheries Entry Comm'n,* 20 P.3d 547, 550 (Alaska 2001).

**4.** *Wilson v. Erickson,* 477 P.2d 998, 999 & n. 1 (Alaska 1970).

**5.** *Id.* at 999.

**6.** In the superior court Conkey argued that he could not have been "operating" the snowmobile because it was inoperable, and only vaguely claimed a due process violation without elaboration. However, in his briefing to this court Conkey adds a specific due process claim, arguing that the hearing officer denied him due process by failing to make a finding as to whether he was "operating" his snowmobile at the time of his stop. We do not reach the due process portion of his argument because Conkey has waived it. First, because Conkey did not sufficiently raise his due process argument before the superior court, it is waived. *Pasco v. State, Dep't of Admin., Div. of Motor Vehicles,* 45 P.3d 325, 328–29 (Alaska 2002) (holding that arguments arising from agency determination are waived if not raised in superior court). Indeed, in the superior court and this court, Conkey has made only cursory reference to due process, relying primarily on his operability argument. Thus, his due

process argument is also waived as insufficiently briefed. *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."). Finally, Conkey does not mention due process in his statement of points on appeal, and we generally do not address arguments omitted from an appellant's statement of points on appeal. *See Gunderson v. Univ. of Alaska, Fairbanks,* 902 P.2d 323, 327 n. 5 (Alaska 1995) (court will not consider arguments not raised before trial court or not included in statement of points on appeal). However, to the extent it is separate from his due process claim, we reach Conkey's operability argument because it was fully briefed to this court, it was raised in front of the superior court, and we can address the claim based on the existing transcript. *See* Alaska R.App. P. 204(e) (in addition to points in statement on appeal, court may consider "points that the court can address effectively without reviewing untranscribed portions of the electronic record."). *See also Native Vill. of Eklutna v. Bd. of Adjustment for Municipality of Anchorage,* 995 P.2d 641, 646 (Alaska 2000) (review of issue on appeal was not precluded when all relevant portions of electronic record were transcribed, appellant raised issue before superior court, and issue was fully briefed on appeal).

the key was not in the ignition, and both skis were strapped to the machine in front." DWI statutes are generally considered remedial, and are thus "liberally interpreted in favor of the public interest and against the private interests of the drivers involved." [7] In this vein, the court of appeals held in *Williams v. State* that "a vehicle's status as a 'motor vehicle' depends on whether the vehicle was designed or constructed to be self-propelled, not whether it is presently capable of moving under its own power." [8] *Williams* involved a similar towing situation, and in reaching this conclusion, the court of appeals stated that:

> The public danger addressed by Alaska's DWI statute is the danger posed by intoxicated people who undertake to control the movement of an automobile on a highway at a time when they are not fully capable of exercising the judgement and coordination required to drive safely. An intoxicated person in control of a car moving down a highway—whether that car is being towed or pushed, or whether it is coasting downhill—poses an equivalent danger to passengers, to other drivers, and to pedestrians, whether or not the car's engine will start. We hold that the act of steering a towed car is "driving" within the meaning of AS 28.35.030(a) and AS 28.40.100(a)(7).[9]

We find this reasoning persuasive given the comparable facts and dangers in this case, and thus hold that Conkey's snowmobile was a "motor vehicle," regardless of the inoperability of its engine at the time of his arrest.[10]

## B. Conkey Was "Operating" His Snowmobile at the Time of His Arrest.

██ Conkey next argues that he was merely a "passenger" on his snowmobile, and thus not operating it, because he could not "influence the speed or direction at which his snowmobile traveled." Alaska courts have long defined the "driver" or "operator" of a vehicle for DWI purposes more broadly than the usual sense of those words, examining the terms in regard to whether a person is in "actual physical control" of that vehicle,[11] which has been defined as the ability to "assert dominion, in the sense of movement" over the vehicle.[12] Alaska courts have held drivers to be in actual physical control where they were behind the steering column and were either controlling a vehicle while it was in motion[13] or could have put the vehicle in motion.[14] Thus, the key issue in determining whether Conkey was operating the snowmobile is whether he was in actual physical

7. *Williams v. State*, 884 P.2d 167, 171 (Alaska App.1994) (citations omitted), *abrogated on other grounds by State v. Coon*, 974 P.2d 386, 391 (Alaska 1999).

8. 884 P.2d at 169 (citing *State v. Tacey*, 102 Vt. 439, 150 A. 68, 69 (1930) ("Manifestly it was the design, mechanism, and construction of the vehicle, and not its temporary condition, that the Legislature had in mind when framing the definition of a motor vehicle.") and *Farley v. State*, 251 Miss. 497, 170 So.2d 625, 627 (1965)).

9. *Id.* at 169.

10. In his appeal to the superior court, Conkey argued that the holding of the court of appeals in *Williams* regarding the definition of a motor vehicle contradicts the holding of this court in *State, Dep't of Pub. Safety v. Conley*, 754 P.2d 232 (Alaska 1988), and cited to the *Conley* court's statement that "a finding that the car is 'reasonably capable of being rendered operable' is required in civil driver's license revocation proceedings." *Id.* at 236 (citations omitted). However, *Conley* involved a case where the defendant had not yet placed the car in motion, *id.* at 233, while in this case, as in *Williams*, the

towed vehicle was already in motion. *Williams*, 884 P.2d at 171. The legislature created liability for DWI to combat the dangers that stem from the operation of a moving vehicle by an intoxicated person, and the operability requirement works to limit liability to only those persons able to pose such a threat. Once a vehicle is in motion, operability is irrelevant—the threat envisioned by the legislature is present, regardless of the particular mechanical state of the vehicle. *See id.*

11. *Jacobson v. State*, 551 P.2d 935, 937–38 (Alaska 1976). Relatedly, AS 28.40.100(a)(7) defines a driver as "a person who drives or is in actual physical control of a vehicle."

12. *Id.* at 938 n. 6 (quoting *State v. Ruona*, 133 Mont. 243, 321 P.2d 615, 618 (1958)).

13. *Williams*, 884 P.2d at 171.

14. *See Conley*, 754 P.2d at 236; *Anchorage v. Cook*, 598 P.2d 939, 942 (Alaska 1979); *Jacobson*, 551 P.2d at 938; *Mezak v. State*, 877 P.2d 1307, 1308 (Alaska App.1994).

control of it in light of the amount of control he could exert over the snowmobile's movement from his position on the snowmobile.

Conkey argues that he was unable to steer his snowmobile because the towing snowmobile actually controlled their direction and that therefore he was not operating a motor vehicle for the purposes of Alaska DWI statutes. However, contrary to Conkey's assertion, there is evidence in the record that he did have some measure of control over his snowmobile. Indeed, Conkey was seated behind the handlebars of the snowmobile and the arresting officer noted that Conkey had a "limited amount of ability to steer." Critical to our analysis is the fact that in this case, as in *Williams,* Conkey was in a position to exercise control sufficient to pose a significant danger to others. He could have exercised his "limited amount of control," both to disrupt the tow and to cause the snowmobile to veer into traffic.[15] Drivers need not have perfect control—the *Williams* court observed that control over towed vehicles is inherently imperfect—but only control that is sufficient to pose a significant danger to others on the road.[16]

In addition, as Conkey admits, if the tow rope had snapped he would have regained full control until the vehicle came to a stop, or, in the case of a partial break in the rope, he would have found himself in a dangerous situation where the torque exerted by the remaining rope could have overturned the snowmobile. In either of these circumstances, Conkey would have been in actual physical control and less able to respond because he was intoxicated. Conkey posed the kind of danger the legislature had in mind when it created DWI penalties. Accordingly, we hold that he was operating the snowmobile as a matter of law, his arrest was justified, and his refusal to submit to a

breath test warranted the revocation of his driver's license.

Similarly, our sister states are virtually unanimous that the ability to steer a moving vehicle, whether it is towed, pulled, or in motion through force of gravity, constitutes actual physical control for the purposes of DWI laws.[17] We thus agree with the reasoning of the *Williams* court that where a defendant retains sufficient control of a towed vehicle to endanger others, he is in actual physical control of that vehicle for the purposes of Alaska DWI statutes. This comports with both the liberal interpretation of DWI statutes noted above and the public policy underlying the statutes; namely, to protect the public from those driving or otherwise controlling motor vehicles while intoxicated.

**C. We Need Not Decide Whether Conkey Was Intoxicated While Operating His Snowmobile Earlier in the Day.**

Conkey also argues that the hearing officer erred by basing her decision on the alternative grounds that the arresting officer had probable cause to believe that Conkey had been operating the snowmobile while intoxicated in the hours before arrest. However, we need not reach this point because our holding that Conkey was operating the snowmobile at the time of his DWI arrest is sufficient to allow us to affirm the license revocation.

**V. CONCLUSION**

Because Conkey's snowmobile was a motor vehicle and because he was operating it at the time of his arrest, we AFFIRM the revocation of his driver's license.

---

15. Indeed, the arresting officer testified that Conkey's snowmobile intermittently pulled into the traffic lane and, when it ultimately lost traction, "swung into the traffic lane and stopped."

16. *See Williams,* 884 P.2d at 174.

17. *See Williams,* 884 P.2d at 168 (noting virtual unanimity among states on this point). Numerous courts have compiled extensive lists of cases

in agreement. *See, e.g., Williams,* 884 P.2d at 168–69; *Colorado Div. of Revenue v. Lounsbury,* 743 P.2d 23, 26–27 (Colo.1987); *see generally* James O. Pearson, Jr., Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 A.L.R.3d 7, at §§ 6 and 10 (1979).