STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, Appellant,

v.

Michele L. CONLEY, Appellee.

No. S–1791.

Supreme Court of Alaska.

April 15, 1988.

Teresa Williams, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Bruce F. Sherman, Jr., Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The state appeals from a superior court decision reversing revocation of a driver's license. The primary issue is whether, in order to find that a driver was in "actual physical control of a vehicle" while intoxicated, the hearing officer must find that the engine of the car was running.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 3, 1985, Lt. Kevin O'Leary of the Anchorage Police Department, while on foot patrol, entered a tavern named Darwin's Theory. There he encountered Michele Conley, who had been involved in a disturbance and had been asked to leave. O'Leary advised Conley that she was too intoxicated to drive. He tried to get her to take a cab home or call a friend for a ride.

O'Leary accompanied Conley outside the bar, advised her to take a taxi home and warned her that if she was observed driving she would be arrested for driving while intoxicated (DWI). Although O'Leary hailed several cabs for Conley, she declined to take a cab home and indicated that she would call friends to drive her home. O'Leary returned to foot patrol after asking another officer to watch Conley to ensure that she did not drive her vehicle.

Shortly thereafter, Conley walked by O'Leary, who was standing at the entrance to an alley. With keys in her hand, she approached a blue car parked in the alley, unlocked the door and sat down in the driver's seat. O'Leary opened Conley's car door and positioned himself to make it impossible for her to shut the door. He asked her what she was doing and she responded that she was driving home. He told her she could not drive home, and she responded, "I will call you when I get home and let you know that I am safe."

O'Leary observed that Conley had her hands on the steering wheel and that she moved the hand holding her keys to place them in the ignition. O'Leary then advised Conley that she was under arrest and removed her from the vehicle. He did not allow her to start the vehicle or even to put the keys in the ignition. Her subsequent Intoximeter 3000 test gave a reading of .208. Based on this result, Conley was given notice of an administrative revocation of her license, pursuant to AS 28.15.-165.[1]

A hearing was held before the Department of Public Safety (DOPS) on August 28, 1985. Conley moved to dismiss the revocation on the basis that there was no evidence that she had been in physical control of the car. The hearing officer reviewed the case law defining "actual physi-

cal control" and sustained the DOPS's revocation action stating:

> Ms. Conley had the potential and the intent and she had the keys in hand, she was seated behind the wheel and the vehicle was operable.

The DOPS revoked Conley's license for 90 days, but granted limited driving privileges for 60 days of that period.

Conley appealed the DOPS's decision and the superior court reversed. The court found *inter alia* that: (1) Conley had not been in actual physical control of her vehicle because the motor was not "running," and (2) in order to find that a person is an "operator" or has actual physical control of a vehicle a finding that the vehicle is "operable" is necessary. The state appealed the issue of whether Conley was "in actual physical control of a vehicle."

## II. DISCUSSION

We directly review the determination of the DOPS, independently of the superior court, because the superior court was acting as an intermediate court of appeals. *Barcott v. State, Dep't of Public Safety,* 741 P.2d 226 (Alaska 1987); *Jager v. State,* 537 P.2d 1100, 1106 (Alaska 1975). Whether the engine must be running to find actual physical control is a question of statutory construction on which this court may substitute its judgment. *Earth Resources Co. v. State, Dep't of Revenue,* 665 P.2d 960, 965 (Alaska 1983).

The relevant statutory scheme is as follows: Under AS 28.35.031(a) "[a] person who *operates or drives* a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath...." (Emphasis added.) If the results of the chemical test indicate that there is 0.10 percent or more

---

1. AS 28.15.165(a) provides:

   If a chemical test administered under AS 28.-35.031(a) to a person driving a motor vehicle for which a driver's license is required produces a result described in AS 28.35.030(a)(2) ... a law enforcement officer shall read a notice and deliver a copy to the person. The notice shall advise that

   (1) the department intends to revoke the person's driver's license ...;

   (2) the person has the right to administrative review of the revocation ...;

   (3) the notice itself is a temporary driver's license that expires seven days after it is delivered to the person;

   (4) revocation of the person's driver's license ... shall take effect upon expiration of the temporary driver's license unless the person within seven days requests an administrative review.

by weight of alcohol in the person's blood and that person "operates or drives" a motor vehicle in such condition, that person commits the crime of "driving while intoxicated." AS 28.35.030(a)(2).

One of the penalties for DWI is revocation of the person's driver's license. AS 28.15.181(a)(5). Revocation is accomplished through a civil proceeding separate from the criminal proceeding. AS 28.15.165.[2] A person who receives notice of revocation may make a written request for administrative review of the DOPS's revocation. AS 28.15.166(a). The issues on review are limited. AS 28.15.166(g).[3] The only issue in Conley's case was whether the arresting officer had reasonable grounds to believe that Conley was driving a motor vehicle while intoxicated.

No statute defines "operate or drive" as the term appears in these sections. However, AS 28.40.100(a)(4) defines "driver" as "a person who drives or is in actual physical control of a vehicle." Similarly, in *Jacobson v. State*, 551 P.2d 935, 938 (Alaska 1976), we interpreted former AS 28.35.030 (which made operating or driving under the influence a crime) as prohibiting "a person who is under the influence of intoxicating liquor [from] being in actual physical control of a vehicle with its motor running." Thus the issue is what may a person do before being considered in "actual physical control of a vehicle."

Conley argues that no Alaska case has upheld a DWI conviction or license revocation where the engine was not running. Thus Conley concludes the engine must be running before one is considered in actual physical control of a vehicle. The state argues that although having the motor running is a strong indicia of control, it is not the only indicia of control used by other states' courts.

The Alaska Court of Appeals has determined that actual physical control does not contain a "movability" requirement. *See Lathan v. State*, 707 P.2d 941, 943 (Alaska App.1985) (upheld the conviction of a driver found asleep behind the wheel in a car stuck in the mud, incapable of movement, where the engine was running). The court of appeals decision is consistent with our decision in *Jacobson* where we observed that AS 28.35.030 falls within "that class of statutes where mere exclusive control of a stationary vehicle while intoxicated is a crime." 551 P.2d at 937.

In *Jacobson* we relied on *State v. Webb*, 78 Ariz. 8, 274 P.2d 338 (1954) where the driver, while intoxicated, was found asleep in his truck, which was idling in a traffic lane with its lights on. We cited the following policy:

> An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving, but it does exist. While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that the defendant had of its own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. He therefore had the "actual physical control" of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's remaining motionless at the time of his apprehension.

551 P.2d at 938 (quoting *Webb*, 274 P.2d at 340). In *Jacobson*, we also adopted the description of actual physical control set out by the Montana Supreme Court: "[A]s

---

**2.** *See supra* note 1.

**3.** AS 28.15.166(g) provides:

(g) The hearing under this section shall be limited to the issues of whether the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while intoxicated and whether

(1) the person refused to submit to a chemical test under AS 28.35.031(a) after being ad-

vised that refusal would result in the suspension, revocation, or denial of the person's license or nonresident privilege to drive and that the refusal is a misdemeanor; or

(2) the chemical test authorized under AS 28.35.031(a) and administered to the person produced a result described in AS 28.35.-030(a)(2).

long as one were physically or bodily able to assert dominion, in the sense of movement, then he has as much control over [the vehicle] as he would if he were actually driving." 551 P.2d at 938 (quoting *State v. Ruona*, 133 Mont. 243, 321 P.2d 615, 618 (1958)).[4] In *Ruona*, the defendant was found sleeping in the driver's seat, the motor was running and the car was parked in the traffic lane of a public street. Nevertheless, the court held that the defendant was in actual physical control of his car. The *Ruona* definition recognizes the potential ability to drive; that is, a person's dominion over the car.

Subsequent decisions have delineated a number of factors used in determining whether a person was in actual physical control of a motor vehicle: (1) whether the person is asleep or awake, (2) whether the motor is running, and (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location.[5] Conley argues that even though some jurisdictions find that the driver is in actual physical control of a car even when the engine is not running, the case law reveals that the car is usually in some sort of predicament indicating the drunk driver drove for at least some period of time before stopping.[6]

However, we are aware of other jurisdictions that find the driver in actual physical control even when it is not apparent the driver had recently been driving. For example, in *Cincinnati v. Kelley*, 47 Ohio St.2d 94, 351 N.E.2d 85 (1976), Kelley drove downtown sober, parked his car, went to a bar and started drinking. After drinking for a while he realized he was in no condition to drive so he went to his car to sleep. Sometime later he called his wife to pick him up then went back to his car to wait for her. Shortly thereafter the police arrested him while he was sitting in the car. The court stated actual physical control requires that

> [a] person be in the driver's seat of a vehicle, behind the steering wheel, in possession of the ignition key, and in such condition that he is physically capable of starting the engine and causing the vehicle to move.

351 N.E.2d at 87–88.[7] The court selected these factors reasoning that the purpose of

---

**4.** The Montana Supreme Court further explained:

> Using the term in "actual physical control" in its composite sense, it means "existing" or "present bodily restraint, directing influence, domination or regulation." Thus, if a person has existing or present bodily restraint, directing influence, domination, or regulation, of an automobile, while under the influence of intoxicating liquor he commits a misdemeanor within the provisions of [the statute].

321 P.2d at 618. *Accord State v. Ghylin*, 250 N.W.2d 252, 253 (N.D.1977) (car in ditch, driver getting out of car, keys in hand, held actual physical control); *Hughes v. State*, 535 P.2d 1023, 1024 (Okla.Crim.App.1975) (car at 90° angle to road, defendant behind wheel, head at passenger seat, key in ignition, engine off, held actual physical control); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1975) (defendant asleep, car parked mostly on highway, engine running, held in actual physical control); *State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690 (1984) (engine off, car partly on left shoulder, vehicle out of gas, held actual physical control); *Adams v. State*, 697 P.2d 622 (Wyo.1985) (vehicle off highway, engine off, no lights on, keys in ignition, driver unconscious behind steering wheel, held in actual physical control).

**5.** *See generally* Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance*, 93 A.L.R.3d 7 (1979). The annotation observes that there are three key terms in DWI statutes: "driving," "operating" and "being in actual physical control." Alaska statutes use all three terms. Actual physical control is the broadest term.

**6.** *See, e.g., Ghylin*, 250 N.W.2d at 253 (car in ditch); *State v. Trucott*, 145 Vt. 274, 487 A.2d 149, 151 (1984) (truck parked in "pull-off"); *Smelter*, 674 P.2d at 691 (car partly off shoulder of interstate); *Adams*, 697 P.2d at 623 (car off highway about 20 feet).

**7.** *See also Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982) (defendant was found seated behind the steering wheel in the "process of starting his motor vehicle" by attempting to turn on the ignition, held that a motorist behind the steering wheel with possession of the ignition key and apparent ability to start and move the vehicle satisfies actual physical control). *Cf. Palme v. Commissioner of Public Safety*, 366 N.W.2d 343, 345 (Minn.App.1985) (under a slightly broader statute, driver found asleep in parked truck with engine turned off was in physical control because "if left alone, the driv-

the DWI ordinance is "to deter persons from being found under circumstances in which they can directly commence operating a vehicle while they are under the influence of alcohol...." *Id.* at 87.

We have similarly determined that the general purpose of our drunk driving laws is to deter persons from driving while under the influence of alcohol or drugs. In *Jacobson* we adopted the language of *Webb* to the effect that an intoxicated person merely sitting behind the steering wheel is a threat. *Jacobson*, 551 P.2d at 938 (quoting *Webb*, 274 P.2d at 340). Two years later in *Ebona v. State*, 577 P.2d 698, 701 (Alaska 1978), we observed that drivers impaired by intoxication present a substantial risk to the driving public. *See also Caulkins v. State, Dep't of Public Safety*, 743 P.2d 366 (Alaska 1987) (state may revoke license of intoxicated person who operated motor vehicle in private parking lot). Recently, in *Tulowetzke v. State, Dep't of Public Safety*, 743 P.2d 368 (Alaska 1987), we decided that treating multiple convictions separately for purposes of sentencing promotes public safety by extending the amount of time a driver's license is revoked.[8]

◼ We conclude that the circumstances of this case establish that Conley was in actual physical control of her vehicle. She was seated in the driver's seat behind the steering wheel. She had possession of the ignition key and was attempting to put the key in the ignition. She was in such condition that she was physically capable of starting the engine and causing the vehicle to move. We conclude that given these factors of control it is not necessary that the engine be running.

◼ Conley argues that the state did not introduce evidence at the hearing to show Conley's car was operable at the time of her arrest. The state responds that in this case no showing has been made that the car was not operable and that the DOPS is

entitled to presume that the car was operable. We agree that a finding that the car is "reasonably capable of being rendered operable" is required in civil driver's license revocation proceedings. *See State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690, 693 (1984).

◼ Although no evidence was offered specifically on the issue of operability, the record supports the hearing officer's finding that Conley's car was operable. The state need only prove its case by a preponderance of the evidence. AS 28.15.166(j). Conley sat down behind the steering wheel, moved the keys to the ignition and told O'Leary she was going to drive home. Clearly Conley assumed the car was operable and the DOPS is entitled to infer operability in the absence of evidence to the contrary.

### III. CONCLUSION

The decision of the superior court is REVERSED and the case is REMANDED with instructions to affirm the administrative decision revoking Conley's license.

---

er might indeed start the truck and attempt to drive home.")

8. *Lundquist v. Dep't of Public Safety*, 674 P.2d 780, 783 (Alaska 1983), is inapposite. There we stated that the policy underlying AS 28.35.032,

refusal to subject to a chemical test, is not to remove drunk drivers from the road but rather a sanction to encourage preservation of evidence. In contrast, AS 28.15.165 is clearly a penalty designed to deter drunk driving.