Greg E. KINGSLEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7288.

Court of Appeals of Alaska.

Nov. 9, 2000.

Darin B. Goff, Assistant Public Defender, Kenai, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Mary S. Pieper, Assistant District Attorney, Dwayne W. McConnell, District Attorney, Kenai, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

■ The crime defined in AS 28.35.030(a) is usually referred to as "driving while intoxicated". The text of this statute speaks of a person who "operates or drives a motor vehicle". Nevertheless, an intoxicated person can commit this crime without "driving" or "operating" a car in the usual sense. The statute is violated whenever an intoxicated person is in actual physical control of a motor vehicle.[1]

Greg E. Kingsley drove his car into a snow berm, where it remained stuck despite his efforts to extricate it. Kingsley turned the engine off, but he continued to sit in the driver's seat. Kingsley testified that, while he sat there, he consumed a bottle of whiskey and became intoxicated. Based on this evidence, Kingsley was convicted of driving while intoxicated.[2]

Kingsley concedes that he was in physical control of his car while he was intoxicated. Nevertheless, he contends that there are two reasons why he could not lawfully be convicted of driving while intoxicated.

*Was there sufficient evidence to support the verdict?*

■ The first reason for reversing his conviction, Kingsley argues, is that the State failed to prove that he was operating a motor vehicle. Kingsley notes that the engine of his car was not running and the State presented no evidence that Kingsley attempted to start the car after he became intoxicated.

But, as explained above, the State did not need to prove that Kingsley operated the vehicle while intoxicated. The crime of "driving while intoxicated" would be established if the State proved that Kingsley exer-

---

1. *See Department of Public Safety v. Conley,* 754 P.2d 232, 234 (Alaska 1988); *Mezak v. State,* 877 P.2d 1307, 1308 (Alaska App.1994). *See also* AS 28.40.100(a)(7), which defines "driver" as "a person who drives or is in actual physical control of a vehicle".

2. Actually, there was conflicting evidence as to when Kingsley had done his drinking. Viewing the evidence in the light most favorable to the State, Kingsley was intoxicated when he drove the car into the snow berm. But to resolve this case, we must take the evidence in the light most favorable to Kingsley.

cised actual physical control over the vehicle while he was intoxicated.

As Kingsley acknowledges in his brief to this court, a person who engages the engine of a vehicle and allows it to run is not merely exercising physical control over the vehicle but is also "operating" it. Thus, if the engine of Kingsley's vehicle had been running when the police arrived, the State might have proved that Kingsley was operating the vehicle while intoxicated. But the State had to prove only that Kingsley was in actual physical control of the vehicle while intoxicated.

The supreme court held in *Department of Public Safety v. Conley*[3] that a person can exercise "physical control" over a motor vehicle (and thus be convicted of driving while intoxicated) even though the vehicle's engine is not running. In *Conley*, the court ruled that an intoxicated person committed DWI when she got behind the wheel, announced an intention to drive, and tried to insert her key into the ignition.[4] This court reached a similar result in *Mezak v. State*[5], where we held that the defendant was properly convicted of operating a water craft while intoxicated when the evidence showed that he actively (but unsuccessfully) tried to start the boat's engine.[6]

■ It is true that *Conley* and *Mezak* involved defendants who did something to try to put their vehicles in motion. But we do not believe that such actions are necessary to prove that a defendant is in "actual physical control" of a vehicle. A person's attempt to operate a vehicle may furnish convincing proof that the person is in actual physical control of the vehicle, but a person may exercise actual physical control over a vehicle without making active attempts to operate it.

In this case, Kingsley was the sole occupant of his vehicle. He was sitting behind the steering wheel, and he had the keys to the vehicle in his pocket. Under these facts, Kingsley was in "actual physical control" of the vehicle even though the engine was not

running and even though Kingsley made no active attempt to start the engine.

*Was the trial judge required to instruct the jury to decide whether Kingsley's vehicle was operable?*

■ Kingsley offers a second reason why his conviction should be reversed. He contends that, under Alaska law, a defendant can not be convicted of DWI under a "physical control" theory unless the government proves that the defendant's vehicle was operable at the time. Kingsley points out that his trial judge never instructed the jury on the issue of operability. He concludes that, because the jurors received no instruction on operability (and assumedly never deliberated on this issue), the jury's verdict is flawed.

Kingsley relies on the supreme court's decision in *Conley*. *Conley* was an appeal from an administrative revocation of a driver's license based on proof that the license-holder exercised actual physical control over a motor vehicle while intoxicated. The supreme court declared that one element of the government's proof was to show that the defendant's vehicle was "reasonably capable of being rendered operable".[7] However, the court also held that, even though the government failed to offer evidence on the issue of operability, the hearing officer was "entitled to infer operability in the absence of evidence to the contrary".[8]

In Kingsley's case, all of the evidence supported a finding that his vehicle was operable or reasonably capable of being rendered operable. Kingsley was driving the car when it slid into the snow bank. Although the car became stuck in the snow and could no longer be moved (without the assistance of towing equipment), there was no evidence that the car ceased to be operable. This court confronted a similar issue in *Lathan v. State*, where we held that the defendant's vehicle remained "operable" even though it was

**3.** 754 P.2d 232 (Alaska 1988).

**4.** *See id.* at 236.

**5.** 877 P.2d 1307 (Alaska App.1994).

**6.** *See id.* at 1308.

**7.** *Conley,* 754 P.2d at 236.

**8.** *Id.*

firmly stuck in deep mud and no longer capable of movement under its own power.[9]

■ Thus, in the final analysis, Kingsley's argument poses the following question: Even when there is no evidence to support a finding that a defendant's vehicle was inoperable, must the trial jury nevertheless be instructed that the defendant can not be convicted of driving while intoxicated under a "physical control" theory unless the jury affirmatively finds that the defendant's car was operable (or was reasonably capable of being rendered operable)? We hold that the answer is "no". If the operability of the defendant's car is not in reasonable dispute, the jury need not be instructed on this issue.

Under *Conley*, when the government pursues a "physical control" theory of DWI, the government must prove that the defendant's vehicle was either operable or reasonably capable of being rendered operable. We assume for purposes of deciding Kingsley's appeal that *Conley*'s requirement of operability applies in criminal cases as well as license revocation cases.[10] But even with this assumption, we conclude that the jury need not make a finding of operability unless there is evidence suggesting the contrary—evidence suggesting that the defendant's vehicle was both inoperable and not reasonably capable of being rendered operable.

A similar legal issue used to be presented in murder cases before the enactment of modern criminal codes. The common-law definition of murder required proof of "malice". Generally speaking, in cases of intentional homicide, "malice" meant that the defendant was of sound mind and that there was no justification, excuse, or mitigation for the killing.[11] But even though "malice" was an element of the government's proof, malice was presumed if (1) the government proved that the defendant committed an intentional homicide and (2) there was no evidence suggesting insanity, justification, excuse, or mitigation.

There [was] a true presumption of malice aforethought. It would be an unreasonable burden upon the prosecution to require it in every murder case to prove not only the killing of the deceased by the defendant, but also the non-existence of every conceivable set of circumstances which might be sufficient to constitute either innocent homicide or guilt of manslaughter only. Thus the prosecution [was] not required to prove in the first instance . . . that the defendant was not so insane as to be wanting in criminal capacity, or that the killing was not by accident, or that it did not result from the privileged use of deadly force[,] or that it did not result from the sudden heat of passion engendered by adequate provocation, or other matters of this kind. To require such proof would constitute an absurd waste of time, and would require proving in many instances the absence of a non-existent circumstance. This difficulty [was] avoided by a rule of law in the form of a presumption.... Every homicide [was] presumed to have been committed with malice aforethought unless the evidence . . . [suggested that the killing was] without malice.

[In murder prosecutions under common law, this] presumption . . . merely places upon the defendant the burden of going forward with . . . evidence [that] throws a different light upon the situation or indicates exculpating or mitigating circumstances. [But if] no such evidence is offered[,] a conviction of murder is proper because of the presumed malice.

R. Perkins & R. Boyce, *Criminal Law* (3rd edition 1982), pp. 76–78 (internal quotations and citations omitted).

When the supreme court decided *Conley*, the court seemingly adopted the same approach to the issue of operability. The court declared that, even though the government failed to introduce any evidence specifically addressed to proving that Conley's car was

---

9. 707 P.2d 941, 943 (Alaska App.1985).

10. We made a similar assumption in *Williams v. State*, 884 P.2d 167, 170 (Alaska App.1994).

11. *See* R. Perkins & R. Boyce, *Criminal Law* (3rd edition 1982), pp. 58–59, 951.

operable, the hearing officer (*i.e.,* the trier of fact) was "entitled to infer operability in the absence of evidence to the contrary".[12]

We conclude that a similar rule should govern the issue of operability in criminal trials where a defendant is charged with driving while intoxicated under a "physical control" theory (that is, where the government does not prove that the defendant drove or operated the motor vehicle). Unless there is evidence suggesting that the defendant's vehicle was *not* operable *and not* reasonably capable of being rendered operable, the jury need not be instructed on the operability issue.

**12.**  *Conley,* 754 P.2d at 236.

*Conclusion*

For these reasons, we conclude (1) that the State presented sufficient evidence to establish that Kingsley was in actual physical control of a motor vehicle while intoxicated, and (2) the trial judge did not need to instruct Kingsley's jury on the issue of operability.

The judgement of the district court is AFFIRMED.