Claude D. WALL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10010.

Court of Appeals of Alaska.

March 27, 2009.

Linda K. Wilson, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### OPINION

MANNHEIMER, Judge.

Claude D. Wall appeals his conviction for felony driving under the influence.[1] He contends that the evidence presented at his trial was legally insufficient to establish that he was operating the vehicle, or (alternatively) that the vehicle in question was operable. For the reasons explained here, we conclude that the evidence was sufficient on both of these issues. Wall also claims that the trial judge should have instructed the jury on the defense of necessity. We conclude that the evidence presented at Wall's trial did not support this defense. Accordingly, we affirm Wall's conviction for felony driving under the influence.

#### *Underlying facts*

In the early morning of June 5, 2006, Alaska State Trooper Lawrence Erickson was on patrol in the Soldotna area. Erickson saw a car stopped at the intersection of Bennett Court and Kalifornsky Beach Road. The car was in the right lane of Bennett Court, with its front end pointing toward the intersection.

When Erickson approached the vehicle, he found Wall sitting in the driver's seat, wearing a seatbelt. Wall was holding an open beer in his right hand, and he had the keys to the car in his left hand.

When Erickson questioned him, Wall admitted that the vehicle was his, and that he had removed the keys from the ignition. Wall also admitted that he did not have a driver's license. (Wall's license was suspended.) However, Wall claimed that he had not been driving the car: he told the trooper that a friend of his had been driving, but the friend had abandoned him there.

Wall showed signs of intoxication; he was disoriented, and he had a hard time focusing on the trooper.

While Erickson was talking to Wall, three more people arrived on the scene by cab: Royce Kenny Oder, Josephine Mestas, and Rita Lindsey. These people had apparently been with Wall earlier in the evening, and one or two of these people contradicted Wall's account: they told Erickson that Wall *had* been driving the vehicle.

Evidently the four people (*i.e.*, Wall and the three others) had been out for the evening. They got into an argument, and Oder (who was driving at that time) turned the vehicle around in the road rather quickly, and the car stalled. Despite Oder's and Wall's efforts, they could not get the vehicle started again, so everyone except Wall left the area on foot. Wall stayed with the vehicle—which is where Trooper Erickson found him.

The State charged Wall with felony driving under the influence, as well as driving with a suspended license. At trial, the parties stipulated that Wall's blood alcohol content was .156 percent (*i.e.*, almost twice the legal limit), that Wall's driver's license was suspended, and that Wall knew that his license was suspended.

During trial, Wall's attorney asked the trial judge, Superior Court Judge Harold M. Brown, to instruct the jury on the defense of necessity (*i.e.*, on the claim that Wall operated the vehicle out of necessity even though he was intoxicated). When Judge Brown asked Wall's attorney what harm Wall was trying to prevent, the defense attorney responded that Wall had been trying to move the car out of the roadway so that it would not constitute a hazard to other vehicles. Judge Brown refused to give the requested necessity instruction.

The jury convicted Wall of driving under the influence but acquitted him of driving with a suspended license.

---

1. AS 28.35.030(n).

*Whether the evidence was sufficient to establish that Wall was operating the vehicle*

 The *actus reus* of driving under the influence is "operat[ing] or driv[ing] a motor vehicle". AS 28.35.030(a). Because the jury acquitted Wall of the separate charge of driving while his license was suspended, we will assume that the jury did not convict Wall of DUI for the act of "driving" his motor vehicle while under the influence. Rather, we assume that the jury convicted Wall of DUI under the theory that Wall "operated" the motor vehicle while under the influence. In this context, "operate" means to have "actual physical control of a vehicle". *Department of Public Safety v. Conley*, 754 P.2d 232, 234 (Alaska 1988); *Jacobson v. State*, 551 P.2d 935, 938 (Alaska 1976).

As explained above, when Erickson encountered Wall, Wall was the sole occupant of the vehicle. He was sitting in the driver's seat, with his seat belt buckled, and with the keys to the vehicle in his hand. Wall told Erickson that he had just removed those keys from the ignition.

Moreover, other testimony at Wall's trial (viewed in the light most favorable to upholding the jury's verdict) showed that Wall and Oder had been trying to get the stalled vehicle started—with Oder standing outside the car, peering under the hood, while Wall sat in the driver's seat, turning the key in the ignition to try to start the car.

This evidence was legally sufficient to support a jury finding that Wall "operated" the vehicle.

*Whether the evidence was sufficient to establish that Wall's vehicle was "operable"*

 In *Department of Public Safety v. Conley*, our supreme court held that, in an administrative proceeding to revoke a person's driver's license based on the allegation that they exercised "actual physical control" over a motor vehicle while under the influence, a license revocation is not proper unless the vehicle in question was "operable" or "reasonably capable of being rendered operable" at the time the defendant exercised control over it.[2] We will assume, for purposes of deciding Wall's appeal, that the *Conley* requirement of operability applies in criminal cases as well as in administrative license revocation proceedings.[3]

Wall argues that the State failed to establish that his vehicle was operable, or was reasonably capable of being rendered operable, when Trooper Erickson arrived at the scene. In support of this argument, Wall relies on the testimony that the vehicle stalled when Oder executed an abrupt turn, and that the vehicle would not start again despite the efforts of Oder and Wall.

We have rejected similar arguments twice in the past, but neither of our decisions on this point were published. *See Axford v. State*, Alaska App. Memorandum Opinion No. 2429 (May 13, 1992), 1992 WL 12153171; and *Blanche v. Anchorage*, Alaska App. Memorandum Opinion No. 3770 (March 11, 1998), 1998 WL 106156. Now that this issue has arisen again, we take this occasion to review these past decisions and to announce our view on this point of law in a published decision.

As explained above, our supreme court held in *Conley* that "operability" of the vehicle is a necessary component of the government's proof when an administrative action to revoke a driver's license is based on the person's "actual physical control" of a non-moving vehicle. As its source for this interpretation of the law, our supreme court cited the rule adopted in a criminal case by the Washington Court of Appeals: *State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690, 693 (1984).[4]

The *Smelter* definition of "operability" does not require proof that the vehicle is currently capable of being started and moved. Rather, the requirement is that *either* the vehicle is currently operable *or* that it is "reasonably capable of being rendered

---

2. *Conley*, 754 P.2d at 236.

3. *See Kingsley v. State*, 11 P.3d 1001, 1004 (Alaska App.2000); *Williams v. State*, 884 P.2d 167, 170 (Alaska App.1994), *abrogated on other*

grounds *by State v. Coon*, 974 P.2d 386, 391 (Alaska 1999).

4. *See Conley*, 754 P.2d at 236.

operable". *Smelter*, 674 P.2d at 693. The *Smelter* court explained that this latter phrase, "reasonably capable of being rendered operable", was intended to distinguish

> a car that runs out of gas on a major freeway near several exits and gas stations from a car with a cracked block, which renders it "totally inoperable."

*Id.* We relied on this distinction in both *Axford* and *Blanche*.

In *Axford*, the defendant drove his vehicle off the roadway and it became stuck in a snow bank. The defendant then made efforts to re-start the car and to free it from the snow, but he succeeded only in draining the battery, so that the car could no longer start. Based on these facts, Axford argued that his car was no longer "operable" when the police arrived.

We rejected Axford's argument because, even though his vehicle could no longer be started on its own, the vehicle remained "reasonably capable of being rendered operable". Referring to the distinction drawn by the Washington Court of Appeals in *Smelter*, we declared:

> Axford's dead car was more analogous to the car which had run out of gas than to the car with the cracked block. We agree with the [government] that a car with a dead battery is reasonably capable of being rendered operable, because it may be jump-started with relative ease at the scene and then sent on its way. Accordingly, the [trial] court did not abuse its discretion in declining to give the operability instruction [requested by Axford].

*Axford*, Alaska App. Memorandum Opinion No. 2429 at 8, 1992 WL 12153171 at *3.

Similarly, in *Blanche*, we concluded that the defendant's vehicle was "reasonably capable of being rendered operable" because "it appears that Blanche needed only a jump and perhaps some gas to start the car." Alaska App. Memorandum Opinion No. 3770 at 4, 1998 WL 106156 at *1 (emphasis omitted).

*See also Kingsley v. State*, 11 P.3d 1001, 1003–04 (Alaska App.2000) (the defendant's car remained "operable" or "reasonably capable of being rendered operable" even though

the car was stuck in the snow and could no longer be moved without the assistance of towing equipment); *Lathan v. State*, 707 P.2d 941, 943 (Alaska App.1985) (the defendant's car remained "operable" even though it was stuck in the mud and no longer capable of movement under its own power).

In Wall's case, the evidence was clear that Wall's vehicle had been moving under its own power until shortly before Trooper Erickson found it. All the witnesses agreed that Wall's vehicle had been driven to that place, and that the vehicle stalled when Oder made an abrupt turn. Both Oder and Wall then engaged in efforts to re-start the car. These efforts were obviously premised on the belief that the vehicle remained "operable" (in the sense of "reasonably capable of being rendered operable") despite the fact that it had stalled.

As in *Axford* and *Blanche*, there was no indication that Oder's execution of an abrupt turn had suddenly rendered Wall's vehicle permanently inoperable. Rather, the evidence indicated that the vehicle's immobility was due to either a flooded engine, or a dead battery, or both. The vehicle therefore remained "operable" within the meaning of *Conley* and *Smelter*.

*Whether Wall was entitled to a jury instruction on the defense of necessity*

■ The last issue in this appeal is whether Wall was entitled to a jury instruction on the defense of necessity.

When Judge Brown and the parties discussed jury instructions, Wall's attorney proposed that the jury be instructed on the defense of necessity with respect to Wall's alleged act of operating the vehicle. Wall's attorney claimed that Wall operated the vehicle only for the purpose of trying to move it off the road, or at least out of the lanes of travel. Judge Brown rejected the defense attorney's request.

According to the testimony at trial, Wall's vehicle was stopped in the right-hand lane of Bennett Court, about eight to ten feet from the traffic lanes of Kalifornsky Beach Road. Wall testified that he was "really foggy" about the details of the evening, but he re-

membered that Kenny Oder was driving his car, and that the car stalled when Oder was turning the vehicle. Oder got out of the vehicle, raised the hood, and tried to start the vehicle (going back and forth from the driver's seat to the front of the car). When these efforts proved unsuccessful, Oder yelled at Wall to get into the driver's seat and try to start the car by turning the ignition.

Wall testified that, in response to Oder's request, he got behind the wheel and, using the keys, he tried several times to start the car—but without success. Wall then thought that they might push the vehicle off the road (so that they would not impede traffic at the intersection), but Oder and the other people in the vehicle all left the vicinity—leaving Wall in sole charge of the vehicle. Wall testified that when Trooper Erickson arrived, he (Wall) was sitting in the driver's seat of the car and still thinking about trying to push the car off the road.

To be entitled to a jury instruction on necessity, Wall had to show that, viewing the evidence in the light most favorable to him, it was reasonable for him to conclude (1) that his unlawful act of operating the vehicle while under the influence was performed to prevent a significant evil, and (2) that there was no adequate alternative course of action to prevent this evil. In addition, Wall had to establish that the foreseeable harm created by his action was not disproportionate to the foreseeable harm he was trying to avoid.[5]

On appeal, Wall argues that this test is met because it was necessary for him to operate the vehicle in order to get the vehicle out of the roadway. This argument fails for three reasons.

First, when Wall got behind the wheel and started cranking the ignition, Oder was still there—and he could have operated the vehicle instead of Wall.

Second, the chronology of events described by Wall does not support a necessity defense.

According to Wall's testimony, he operated the vehicle—that is, he got behind the wheel and repeatedly turned the key in the ignition—because he and Oder believed that the car could be started and then driven away. It was only *after* these attempts failed that Wall decided that they should push the vehicle off the road so that it would not constitute a traffic hazard. (As explained above, Oder and the other passengers left the scene at about this time, and Wall—who was now alone in the vehicle—never made any effort to get the vehicle off the road.)

In other words, the asserted necessity to move the car off the roadway did not arise until Wall had already committed the offense.

Furthermore, Wall did not testify about the alternatives that were seemingly available to him. For instance, Wall did not discuss the possibility of using flares or emergency blinkers to alert other motorists to the hazard. In addition, Wall's vehicle was stopped less than a quarter-mile from another road (Ciechanski Road), and there was also a bar (the Duck Inn) in the same area. But when Wall took the stand, he did not discuss the possibility of going to the bar to call for a tow truck, or (alternatively) flagging down another motorist, or going to the bar to enlist someone's aid in pushing his vehicle off the road.

For these reasons, we uphold Judge Brown's decision not to instruct the jury on the defense of necessity.

### Conclusion

The judgement of the superior court is AFFIRMED.

---

**5.** *Lacey v. State,* 54 P.3d 304, 307 (Alaska App. 2002).