NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ANDREW CRAIG SIMPSON, | Court of Appeals Nos. A-13129, |
| Appellant, | A-13139, & A-13130 |
| | Trial Court Nos. 3AN-16-08118 CR, |
| v. | 3AN-11-01816 CR, & 3AN-14-11502 CR |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | [No. 2703 — May 21, 2021] |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael D. Corey and Eric A. Aarseth, Judges.

Appearances: Bradly A. Carlson, The Law Office of Bradly A. Carlson, LLC, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Patricia L. Haines, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

Andrew Craig Simpson was charged with felony driving under the influence, third-degree weapons misconduct, fourth-degree weapons misconduct, fifth-degree weapons misconduct, and driving with a canceled, suspended, or revoked license after police responded to a report that Simpson was parked in front of his girlfriend's

home and refusing to leave.[1] Simpson pleaded guilty to fifth-degree weapons misconduct and driving with a canceled, suspended or revoked license. He was convicted by a jury of felony driving under the influence, third-degree weapons misconduct, and fourth-degree weapons misconduct. On appeal, Simpson raises four claims of error.

First, Simpson argues that the trial court erred when it denied his motion to suppress the evidence obtained against him after the police initiated an investigative stop, turned arrest. For the reasons explained here, we find no error in the trial court's ruling.

Second, Simpson argues that the trial court failed to give an additional curative instruction after the prosecutor repeated an argument that the court had ruled was improper. Because the record shows that the trial court did give an additional curative instruction, we find no merit to this claim.

Third, Simpson argues that the trial court erred when it allowed the prosecutor to argue an "operating" theory to the jury because, according to Simpson, there was legally insufficient evidence to convict him of operating. Because the record shows that there was legally sufficient evidence to convict Simpson of operating, we find no error.

Lastly, Simpson argues that the trial court erred when it refused to merge his convictions for third-, fourth-, and fifth-degree weapons misconduct. Because we conclude that merger was not required, we affirm the separate convictions for these charges.

---

[1] AS 28.35.030(n), AS 11.61.200(a)(1), AS 11.61.210(a)(1), AS 11.61.220(a)(1)(A), and AS 28.15.291(a)(1), respectively.

*Background facts and prior proceedings*

During the late morning of October 9, 2016, Simpson picked up his then-girlfriend, Nora Hadley, from a local hotel to take her to her parents' home. When Simpson arrived, Hadley smelled alcohol on his breath and could tell he had been drinking. Simpson and Hadley then drank more alcohol while sitting in the car in the hotel parking lot before departing for Hadley's parents' home. Upon arriving at her parents' home, Hadley told Simpson she needed to change her clothes and went inside. Once inside her parents' home, she called 911 to report that Simpson was "intoxicated," "smoking weed and meth," parked outside her home, and refusing to leave.[2]

Officers Heidi Schaeffer and Aaron Hostetter responded to the call in separate cars. One officer parked in front of Simpson's car and the other parked behind Simpson's car in order to block it in. Officer Schaeffer then walked up to the driver's side door and asked Simpson for his license and if he had any weapons. Simpson denied having any weapons, but he patted a long object in his front left pants pocket as he did so.

Simpson's car was not running, but Simpson was in the driver's seat and the keys were on a belt loop in Simpson's lap. Simpson admitted to driving the vehicle to its current location, and he indicated that he intended to drive away when his girlfriend returned. Simpson also admitted to drinking a couple shots of alcohol before driving. Officer Schaeffer noticed that Simpson had red, watery eyes and she smelled alcohol on Simpson's breath and a "strong" odor of burnt marijuana coming from his car. Officer Schaeffer also observed that Simpson "had a hard time focusing" during his conversation with her before he stepped out of the car.

---

[2] Hadley's testimony at trial differed from the 911 recording. At trial, Hadley testified that she left the vehicle and called 911 from the home because she did not feel safe in the car and that Simpson did not smoke marijuana or methamphetamine while in the car.

Officer Schaeffer asked Simpson to step out of the car to perform field sobriety tests. After Simpson exited the car, Officer Schaeffer indicated that she wanted to conduct a pat-down search. Simpson then attempted to run away from the officers. The officers caught up with him and placed him in handcuffs. After being cuffed, Simpson disclosed that he had a gun in his front left pocket — the same pocket with the long object that he patted while claiming he did not have any weapons.

Simpson was arrested and taken to jail, where the officers attempted to administer field sobriety tests. The officers completed only the horizontal gaze nystagmus test, which showed a lack of smooth pursuit in both eyes. The officers then administered a breath test, which indicated that Simpson had a breath alcohol level of .076. An expert for the State later testified that, based on the results of the breath test, Simpson's breath alcohol level was somewhere between .069 and .12 at the time he was driving.

Simpson was charged with driving with a canceled, suspended, or revoked license and felony driving under the influence because he had six prior convictions for driving under the influence. He was also charged with third-degree weapons misconduct for possessing a concealable handgun after being convicted of a felony, fourth-degree weapons misconduct for possessing a gun while intoxicated, and fifth-degree weapons misconduct for failing to inform the officers regarding the presence of the gun. Simpson pleaded guilty to the driving while license canceled, suspended, or revoked charge and the fifth-degree weapons misconduct charge, and went to trial on the remaining charges. The jury convicted him of driving under the influence, third-degree weapons misconduct, and fourth-degree weapons misconduct. Simpson waived his right to a jury trial on his prior driving under the influence convictions, and the trial court found him guilty of felony driving under the influence after a short bench trial. At sentencing, the trial court imposed 5 years with 2 years suspended (3 years to serve) for driving under the

influence, 2 years to serve for the third-degree weapons misconduct to run consecutively to the driving under the influence charge, 180 days to serve for the fourth-degree weapons misconduct to run concurrently, 30 days to serve for the fifth-degree weapons misconduct to run consecutively, and 1 year to serve for the driving while license canceled, suspended, or revoked to run concurrently for a composite sentence of 7 years and 30 days with 2 years suspended (5 years and 30 days to serve).

This appeal followed.

*Simpson's motion to suppress*

Prior to trial, Simpson filed a motion to suppress the evidence obtained against him as a result of the investigatory stop and arrest, arguing that the officers (1) lacked reasonable suspicion to contact him; (2) lacked reasonable suspicion to conduct the pat-down search; (3) lacked probable cause to arrest him for driving under the influence; (4) improperly asked him to perform field sobriety tests at the police station after his arrest; and (5) lacked authority to request a breath sample. Following an evidentiary hearing, the trial court rejected all of these arguments and denied the motion to suppress. Simpson now renews these arguments on appeal.

Simpson first challenges the initial investigatory stop. An investigatory stop requires "reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred."[3] Reasonable suspicion exists if the totality of the circumstances indicates that there is a substantial possibility that conduct giving rise to a public danger has occurred.[4] Reasonable suspicion requires more than "an

---

[3]    *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976).

[4]    *Beltz v. State*, 221 P.3d 328, 337 (Alaska 2009).

inchoate and unparticularized suspicion or hunch."[5] The officer must identify "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion."[6]

Here, the officers received a 911 call from Simpson's girlfriend who reported that Simpson was intoxicated, "smoking weed and meth," and that he was now sitting in the driver's seat of a parked car outside her residence, refusing to leave. This information was sufficient to justify the police initiating an investigatory stop so that they could question Simpson.[7]

Moreover, as soon as the officers arrived, they obtained additional evidence of potential public danger sufficient to meet the more stringent standard to arrest Simpson. Probable cause to arrest exists if the totality of the circumstances known to the officer would support a reasonable belief that an offense has been or is being committed.[8] After the officers parked and began to approach Simpson, they could smell a strong odor of marijuana coming from the car. Upon contacting Simpson, the officers smelled the odor of alcohol coming from Simpson's breath and observed that he had red, watery eyes and that he had difficulty tracking the conversation. Simpson also admitted to driving, drinking shots of alcohol, and smoking "a little bit" of marijuana that day. All of this

---

[5] *McQuade v. State*, 130 P.3d 973, 977 (Alaska App. 2006) (quoting *In re J.A.*, 962 P.2d 173, 176 (Alaska 1998)).

[6] *Waring v. State*, 670 P.2d 357, 365 (Alaska 1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

[7] *See Romo v. Anchorage*, 697 P.2d 1065, 1069 (Alaska App. 1985) (holding that an imminent public danger exists when an intoxicated driver retains possession and control of a motor vehicle).

[8] *State v. Joubert*, 20 P.3d 1115, 1118-19 (Alaska 2001).

information, taken together, was sufficient to establish probable cause to arrest Simpson for driving under the influence.

On appeal, Simpson challenges the officers' attempt to conduct field sobriety tests at the police station. But because the officers had probable cause to arrest Simpson for driving under the influence, they necessarily had the reasonable suspicion required to ask Simpson to perform field sobriety tests.[9] Moreover, contrary to Simpson's claims, the request to complete field sobriety tests did not violate Simpson's *Miranda* rights because field sobriety tests are generally non-testimonial in nature.[10] We likewise see no issue with the police administering these tests at the police station rather than at the scene given that probable cause to arrest Simpson already existed without the field sobriety tests.[11]

Simpson also challenges the pat-down search, arguing that there was no reasonable suspicion to believe that he had any weapons. But testimony at the evidentiary hearing established that the officers saw a long object in Simpson's pants pocket, and that Simpson patted that area when he denied having any weapons. Testimony from the evidentiary hearing also established that Simpson reached for that same pocket when he first got out of the car, further justifying the officer's decision to conduct a pat-down search.

Lastly, Simpson argues that the officers lacked the authority to require him to submit to a breath test. We find no merit to this claim. Under Alaska's implied consent law, a driver of a motor vehicle who has been lawfully arrested for driving under

---

[9] *See Hurlburt v. State*, 425 P.3d 189, 195 (Alaska App. 2018).

[10] *Palmer v. State*, 604 P.2d 1106, 1109 (Alaska 1979).

[11] *Cf. id.* (concluding that post-arrest administration of breath test at police station and "several physical tests designed to determine whether, and to what extent, the defendant was under the influence of intoxicating liquor" was proper).

the influence must submit to a breath test or face potential charges for refusing to submit to a chemical test.[12]  Simpson was arrested, in part, based on probable cause that he was driving or operating a motor vehicle while under the influence.

Accordingly, we affirm the superior court's ruling on the motion to suppress.

*The prosecutor's improper argument*

During closing argument, the prosecutor argued to the jury that "it's up to you to decide whether you think someone in Mr. Simpson's condition is okay to drive. If you want someone like him on your roads, in your community . . . ."  This line of argument was improper.[13]

Simpson's attorney objected to the prosecutor's statements.  The trial court sustained the objection and gave a curative instruction, instructing the jury that "the problem with the argument is that it puts you in the street . . . .  But this isn't about any prejudice or sympathy towards anyone in particular.  You need to decide this objectively. Are the facts there or not, regardless of how you might personally feel about it."

Despite the fact that the trial court sustained the defense attorney's objection and gave a curative instruction, the prosecutor returned to this same line of argument later in her closing argument, again telling the jury, "If you want an individual like Mr. Simpson driving around, that decision is up to you."

---

[12]  *See* AS 28.35.031(a).

[13]  *See ABA Standards for Criminal Justice* § 3-6.8(c) at 37 (4th ed. 2017) ("The prosecutor should not make arguments calculated to appeal to improper prejudices of the trier of fact.  The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty."); *see also Hess v. State*, 435 P.3d 876, 881 (Alaska 2018) (citing to § 3-6.8(c) to support the conclusion that the prosecutor in that case made an improper argument).

On appeal, Simpson argues that the trial court erred because, according to Simpson, the trial court failed to give a second curative instruction after the prosecutor repeated the improper argument. But the record clearly shows that the trial court *did* give a second curative instruction after the closing arguments were concluded. The trial court once again instructed the jury that their role was to view the facts objectively and to follow the law, regardless of their personal opinion regarding drinking and driving. The trial court also instructed the jury that this part of the prosecutor's argument was improper and that it was to hold the State to its burden. The court then confirmed with the jurors that they were able to do so: "Everybody clear they can follow the instruction? Anyone can't follow the instruction, please raise your hand. No hands. Okay."

Accordingly, because the trial court responded to the prosecutor's improper argument with appropriate curative instructions, we find no merit to this claim of error.

*The jury instruction on "operating" a motor vehicle*

At trial, the prosecutor argued that Simpson had driven to his girlfriend's house while intoxicated. The prosecutor also argued that Simpson had "operated" the parked car while intoxicated because he was in full physical control of the car with the keys at ready access to drive away at any time. The trial court instructed the jury on both "driving" and "operating." Simpson objected to the instruction on "operating," arguing that there was insufficient evidence to convict him of operating. The trial court overruled the objection.

On appeal, Simpson renews his argument that the jury should not have been instructed on "operating" because, according to Simpson, there was legally insufficient evidence to convict him of operating because he "made no movements to indicate a present intent to move the car." But the jury could reasonably infer an intent to move the car based on Simpson's statements and his actions in sitting in the driver's seat with his

keys in easy reach. In any event, as the State points out, the appellate courts have previously upheld operating convictions based on similar facts and Simpson fails to meaningfully distinguish his case from those prior cases.[14]

*Merger of the weapons misconduct convictions*

Whether guilty verdicts merge into a single conviction is a mixed question of fact and law — the facts underlying the offenses are reviewed for clear error but "[t]he ultimate legal question of merger under the double-jeopardy clause is reviewed de novo."[15] Multiple convictions arising from the same course of conduct do not violate double jeopardy when the differences in intent and conduct between the offenses are "substantial or significant enough to warrant multiple punishments."[16] To determine whether multiple punishments are warranted, this Court looks to "the quality of the differences, if any exist, between the separate statutory offenses, as such differences relate to the basic interests sought to be vindicated or protected by the statutes."[17] This requires examining both "the conduct punished as well as the societal interests protected by the two statutes."[18]

---

[14] *See, e.g.*, *State v. Conley*, 754 P.2d 232, 236 (Alaska 1988) (concluding that defendant was in "actual physical control" of her vehicle even though the engine was not running where she was seated in driver's seat, had possession of ignition key, and was attempting to put key in ignition); *Kingsley v. State*, 11 P.3d 1001, 1002-03 (Alaska App. 2000) (finding evidence legally sufficient to convict defendant of "operating" when defendant was the sole occupant in the vehicle and was sitting in the driver's seat with the keys in his pocket after driving his car into a snow berm).

[15] *Johnson v. State*, 328 P.3d 77, 81 (Alaska 2014).

[16] *Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

[17] *Id.*

[18] *Johnson*, 328 P.3d at 88 (quoting *Mead v. State*, 489 P.2d 738, 743 (Alaska 1971)).

Here, Simpson was convicted of three different weapons misconduct charges: (1) third-degree weapons misconduct for possessing a concealable firearm after being convicted of a felony;[19] (2) fourth-degree weapons misconduct for possessing a firearm while impaired by intoxicating liquor or a controlled substance;[20] and (3) fifth-degree weapons misconduct for failing to inform the police that he was carrying a concealable deadly weapon.[21] Simpson argues that all three convictions should have merged into a single conviction. We disagree.

We have previously held in an unpublished opinion that separate convictions for third-degree weapons misconduct (felon in possession of concealable firearm) and fourth-degree weapons misconduct (possession of firearm while intoxicated) do not merge because they "implicate significantly different societal interests."[22] As we explained in that case, the third-degree weapons misconduct statute prohibiting felons from possessing concealable firearms is a status offense that prohibits a certain class of people (convicted felons) from possessing firearms that can be concealed.[23] In contrast, the fourth-degree weapons misconduct statute prohibiting possession of a firearm while under the influence of an intoxicating liquor or controlled substance applies equally to all persons and is more akin to the prohibition against

---

[19] AS 11.61.200(a)(1).

[20] AS 11.61.210(a)(1).

[21] AS 11.61.220(a)(1)(A).

[22] *See Glover v. State*, 2020 WL 232799, at *2 (Alaska App. Jan. 15, 2020) (unpublished) (holding that fourth-degree weapons misconduct does not merge with third-degree weapons misconduct); *see also Ladick v. State*, 2005 WL 19222, at *2 (Alaska App. Jan. 5, 2005) (unpublished) (holding that fourth-degree weapons misconduct was not a lesser included offense of third-degree weapons misconduct).

[23] *Glover*, 2020 WL 232799, at *2.

driving under the influence.[24] The two offenses thus involve different elements and are directed at different dangers.

We likewise conclude that a conviction for fifth-degree weapons misconduct does not merge with either of the other weapons offenses because it involves different conduct and is directed at a different societal interest — namely, the protection of police officers by creating an affirmative duty to report any concealable deadly weapons.[25]

Accordingly, we find no error in the trial court's refusal to merge these three convictions.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[24] *Id.*

[25] *See De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991) ("[T]he policy underlying concealed weapons statutes is to prevent the surprise use of deadly force by prohibiting people from 'having, readily available for use, weapons of which others are unaware.'") (quoting *Anchorage v. Lloyd*, 679 P.2d 486, 487 (Alaska App. 1984)).